# EXHIBIT 18



**Attorneys at Law**
Alabama
Colorado
Florida
Georgia
Louisiana
Mississippi
North Carolina
South Carolina
**Tennessee**
Texas
Washington, DC

**Maia T. Woodhouse**
Direct: 615.259.1085
E-Fax: 615.780.0016
maia.woodhouse@arlaw.com

July 2, 2024

**VIA EMAIL ONLY**

Chanelle Acheson
Waddey Acheson LLC
1030 16th Avenue South, Suite 165
Nashville, Tennessee 37212
E-mail: chanelle@waddeyacheson.com

> **Re:    Response to Correspondence Sent June 11, 2024**

Dear Chanelle:

As you know, this firm represents Cheekwood Botanical Garden and Museum of Art ("**Cheekwood**"). We write in response to your undated letter sent to Cheekwood on June 11, 2024, on behalf of the newly formed entity SB Initiative, Inc.  ("**SB Initiative**").

We gather from the letter that a faction of former Swan Ball volunteers has formed SB Initiative in an attempt to wrest ownership of the Swan Ball from Cheekwood.  Your client's actions are in direct response to Cheekwood's efforts to align the Swan Ball with nationally recognized philanthropic benchmarks and fundraising best practices.  Cheekwood is disheartened to learn that this faction was working to take over the Swan Ball as early as March 2024, at a time when Cheekwood believed those individuals were working *with* Cheekwood to address long overdue and badly needed fiscal reform.

## A.    Background

For more than 60 years, Cheekwood has been proud to host the Swan Ball, its renowned white-tie gala founded to help preserve the Cheekwood grounds and the historical, cultural and educational programs Cheekwood offers to the public.  Cheekwood has the utmost gratitude and respect for each and every Swan Ball volunteer and their tireless efforts on behalf of Cheekwood.

The Swan Ball committee referenced in your letter is a department of Cheekwood from a legal, operational, and financial standpoint, reports to Cheekwood leadership, and relies on Cheekwood's assets (including Cheekwood's grounds and its Swan Ball Office) in its operations. All activities of the Swan Ball are conducted under Cheekwood's 501(c)(3) not-for-profit status and included in Cheekwood's annual financial statements. Swan Ball activities are accounted for within Cheekwood's annual Form 990, which is submitted to the IRS. The Cheekwood Board of Trustees thus has fiduciary responsibility for all activities of Cheekwood, including the operation of the Swan Ball.

Charity oversight organizations, such as *Charity Navigator*, *Guidestar*, and *Charity Watch*, use IRS Form 990 to rate charities for transparency, financial accountability, and various nonprofit ratios (or key performance indicators), including the charity's "fundraising efficiency ratio." This ratio measures how much revenue is generated for every dollar that is spent on fundraising. Charity rating agencies and the Better Business Bureau have set fundraising efficiency ratios of minimum 60–70% return as the industry standard. Indeed, prestigious charity events across the nation, such as the Met Gala, the San Francisco Ballet Gala, and the American Museum of Natural History Gala, as well as events benefiting other Nashville or botanic garden institutions, consistently meet—and exceed—these 60–70% industry standards.

Cheekwood believes it is critical to uphold these nonprofit industry standards. However, the annual Swan Ball event has become increasingly extravagant and expensive. The Swan Ball's fundraising efficiency ratio now falls well under the 60–70% industry standard. Last year, for example, the fundraising efficiency ratio of the Swan Ball was only 36%. The year prior netted an even lower 26%.

The Swan Ball's fundraising efficiency ratio vis-à-vis other local, industry, and national charitable events is enclosed and shown below. As you can see, the delta between the Swan Ball's ratio and the ratios of comparable events is staggering.



Cheekwood, like any nonprofit entity, has a professional, ethical, and legal obligation to be fiscally responsible. This includes making sure that the Swan Ball meets industry benchmarks for charitable fundraisers. It is incumbent on Cheekwood and its volunteer committees to be good stewards of its donors' generous contributions.

The Swan Ball, in its current form, is not sustainable. Lavish spending, resulting in such low fundraising efficiency ratios, is contrary to Cheekwood's charitable objectives and guiding values, and likely shocking to Cheekwood's donors. It risks exposing Cheekwood to poor ratings from charity oversight groups, to diminished public trust, and to irrevocable damage to the Cheekwood and Swan Ball brands.

Cheekwood's leadership has addressed these concerns with its Swan Ball volunteers, presenting them with objective data and requiring the committees to improve outcomes. Cheekwood developed a series of "best practices" and parameters to reduce expenses and improve the Swan Ball's fundraising efficiency ratio over time, including an achievable three-year plan to gradually raise the ratio to at least 50% (which is still far below best practices but accounts for the need to construct a tent to hold the event at Cheekwood).

Resistant to reform and modernization, and determined to continue the trend of lavish spending and charitable underperformance, your clients pretended to engage with Cheekwood while secretly conspiring to seize ownership and control of the Swan Ball.

Against this backdrop, we now respond to the claims and demands in your letter.

B.      **The Swan Ball Committee is a Cheekwood department and agent, not a legal entity.**

We must first correct the assertions that SB Initiative "holds all right, title and interest in any and all property of the entity formerly known as the Swan Ball Committee." Such statements are unsupported by the facts and law.

It is undisputed the "Swan Ball Committee" is not a legal entity or cognizable juridical person.[1] Rather, it is a committee of Cheekwood—a fluid collection of individual volunteers that have generously donated their time on behalf of Cheekwood. There is no continuity from the volunteers who helped plan Cheekwood's first Swan Ball in 1963 through the slate of 2025 volunteers.

Nor is there any dispute that the volunteers who help organize the Swan Ball are, and have always been, agents acting on behalf of Cheekwood. Decades before the nascent SB Initiative was devised to take over the Swan Ball, Cheekwood formally recognized that the Swan Ball is an unincorporated fund raising agent of Cheekwood acting under the control of Cheekwood.

It is further indisputable that all activities conducted by Swan Ball volunteers are facilitated by and on behalf of Cheekwood. As noted above, Swan Ball activities and operations are conducted under Cheekwood's 501(c)(3) not-for-profit status and are included in Cheekwood's annual financial statements and Form 990. The Swan Ball Office is a department within Cheekwood staffed by Cheekwood employees. Disbursements and receipts for the Swan Ball go through Cheekwood. Payments for Swan Ball activities are made from Swan Ball bank accounts established by Cheekwood and funded by Cheekwood donors. The only volunteers with signatory

---

[1] Your client acknowledges this fact in its June 10, 2024, letter to Cheekwood's Board of Trustees, alleging that it has now "formalize[d] its operations" through its "new legal status" as SB Initiative, as well as its June 11, 2024, letter sent on your letterhead. *See* your undated letter (noting the " . . . transition of the Swan Ball Committee to its new legal status under SB Initiative, Inc.").

authority on Cheekwood's Swan Ball accounts are those expressly designated and authorized by Cheekwood, which vary from year to year as the volunteers on the committee change.

Put simply, the "Swan Ball Committee" is not an entity capable of holding legal title to any real or personal property—and thus, has no property rights to convey to SB Initiative. Any claim by SB Initiative to own property as a successor or assignee of the Swan Ball committee fails because the Swan Ball committee never owned, and cannot own, any property. Any use of the SWAN BALL name and mark by volunteers, including Cheekwood's Swan Ball committee, was on behalf of and inures to the benefit of Cheekwood.

**C.      Cheekwood owns the SWAN BALL trademark and related assets.**

Nor does SB Initiative have any basis to claim any rights in, or demand that Cheekwood abandon its rights in or applications for, Cheekwood's SWAN BALL trademark.

Cheekwood is the owner of longstanding rights in the trademark SWAN BALL in connection with charitable fundraising and organizing charitable auctions, galas, and other events. Through extensive marketing, advertising, and use for more than 60 years, as well as tremendous media coverage, the SWAN BALL mark has become a well-known source identifier that consumers associate exclusively with Cheekwood.

Indeed, in accordance with state requirements, Cheekwood has consistently listed "SWAN BALL" as one of the names used by Cheekwood to solicit funds in its charitable organization registration renewals filed with the Tennessee Secretary of State. We invite SB Initiative to produce evidence that the "Swan Ball Committee" referred to in your letter has also complied with these state requirements.

Cheekwood also owns Tennessee registration no. 42241 for the SWAN BALL mark, for "[c]haritable fundraising services involving auction and gala events with proceeds going to Cheekwood Botanical Garden and Museum of Art." The Tennessee registration dates to July 1, 2004, and has been valid and subsisting since that date.

Despite this, Cheekwood has learned that SB Initiative recently filed the following application with the United States Patent and Trademark Office (the "**USPTO**") to register the identical SWAN BALL mark for the following identical services (the "**Application**"):

| Mark / App. | Application | Goods/Services and Basis |
|---|---|---|
| SWAN BALL No. 98569484 | Filing date: May 26, 2024<br><br>Filed by: SB Initiative | IC036. Charitable fundraising services.<br><br>Basis: 1(a) Use in Commerce<br>First use anywhere: June 30, 1963<br>First use in commerce: June 30, 1963 |

SB Initiative—an entity formed three days before the Application was filed—cannot claim that it was using the SWAN BALL trademark since 1963. Nor can SB Initiative credibly assert that the SWAN BALL trademark was "assigned by the Swan Ball Committee to SB Initiative, Inc." As detailed above, the "Swan Ball Committee" is not and has never been a legal entity.

Rather, it is a variable group of volunteers (whose roster changes annually) that has acted at all times on behalf of, and as agents of, Cheekwood.

Cheekwood has not authorized SB Initiative to file an application to register its SWAN BALL mark, nor has Cheekwood authorized SB Initiative to use its SWAN BALL mark for any purpose. As your letter tacitly concedes, SB Initiative's use of Cheekwood's identical mark for Cheekwood's identical services would constitute blatant and actionable trademark infringement, false advertising, and unfair competition under federal and state laws.

Exacerbating the level of confusion and damage to Cheekwood is the willful and intentional nature of SB Initiative's conduct. According to USPTO records, after being warned that "willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001," SB Initiative submitted the following sworn statement by its "Executive Committee Chair Person":

> To the best of the signatory's knowledge and belief, **no other persons**, except, if applicable, concurrent users, **have the right to use the mark in commerce**, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive.

*See* Application (emphasis added).

The signatory for SB Initiative's Application is a former chairperson of the Swan Ball, assuring that SB Initiative has actual knowledge of Cheekwood's prior trademark rights. Additionally, SB Initiative submitted seven pages of screenshots of Cheekwood's Swan Ball website at the domain <www.swanball.com/about> for its specimen of use in support of the Application, with knowledge that it does not own the website or the website content, and that the "specimens" demonstrate use not by SB Initiative, but by Cheekwood. It therefore appears the Application and Declaration contains false statements that may constitute fraud on the USPTO, rendering the Application *void ab initio* and potentially exposing SB Initiative and those acting in concert with it to other penalties.

**D.**     <u>**SB Initiative is not entitled to access Cheekwood data and computer systems.**</u>

SB Initiative's demand that Cheekwood give SB Initiative access to Cheekwood's domain and website located at <www.swanball.com> (the "**Swan Ball Website**"), Panorama/GiftWorks database, and Swan Ball MailChimp account—and to turn over Cheekwood's donor information to SB Initiative—is similarly unsupported.

First, as amply demonstrated above, SB Initiative has no property interest in or right to access Cheekwood's proprietary systems, donor information, and data. Such assets belong to Cheekwood, not its volunteer committee or any individual member thereof, so no rights were or could have been legally conveyed.

Second, SB Initiative's assertions that the Swan Ball Website "was administered by a company contracted and paid for by the Swan Ball Committee", that "[t]he account with

Panorama/GiftWorks Database is with the Swan Ball Committee (now SB Initiative, Inc.)", and that the Swan Ball committee occupied "the primary account holder status" for the Swan Ball MailChimp account, are demonstrably false.[2]

As SB Initiative's principals likely know, the account holder for the Swan Ball Website, Panorama/GiftWorks database, and Swan Ball MailChimp account was and continues to be <swanball@cheekwood.org>—the email address owned by Cheekwood for use by employees of Cheekwood's Swan Ball Office and hosted on Cheekwood's domain. These accounts are and have been managed by Cheekwood's IT department and Swan Ball Office employees and paid for by Cheekwood's Swan Ball bank accounts funded by Cheekwood's donors. Infrastructure support for Swan Ball IT products is provided by Cheekwood. Cheekwood's Swan Ball Office contracts with and pays for vendors to update the Swan Ball Website and Panorama/GiftWorks database. While Cheekwood may have granted certain Swan Ball volunteers *access* to these systems to facilitate their role as Cheekwood's authorized agents, neither the "Swan Ball Committee" nor individual volunteers owned or controlled these assets. Consequently, Cheekwood could not have "taken control" or "misappropriated" assets that are and have been under Cheekwood ownership and control.

Third, your client's demand for Cheekwood data—and demand that Cheekwood cease use of and disclose it to an unknown and unauthorized entity like SB Initiative—is particularly concerning with respect to Cheekwood's donor information. As a non-profit, SB Initiative must know Cheekwood is legally responsible for issuing tax acknowledgement letters and gift receipts to donors as required by the IRS, as well as reporting individual donor data above certain levels in its Form 990. Cheekwood is thus responsible for maintaining access to current donor information for IRS reporting purposes, and must decline SB Initiative's naked demands for disclosure.

Cheekwood has evidence that SB Initiative or individuals in concert with it have engaged in multiple unauthorized attempts to access and misappropriate Cheekwood's data, and recently absconded with several boxes of Cheekwood paper files stored in the Swan Ball Office on Cheekwood property. For example, several individuals have attempted to gain unauthorized access to Cheekwood employee computers and files, Cheekwood's Swan Ball MailChimp account, and the Panorama/GiftWorks database, which contains confidential donor files, email lists, and other confidential and/or sensitive information belonging to Cheekwood. These attempts have taken place onsite and online, including on or around May 17, 2024; May 31, 2024; June 4, 2024; and June 7, 2024. As a result of these attempts, Cheekwood has had to implement additional physical and electronic security measures, and was recently "hardlocked" out of its own Panorama/GiftWorks account due to SB Initiative's demands for access, causing further damage and interruption to Cheekwood's operations.[3]

---

[2] SB Initiative has published similarly untrue statements in its June 10, 2024, and July 1, 2024, letters to Cheekwood's Board of Trustees.

[3] Cheekwood's 1099 independent contractor signed the vendor contract with Frontstream (the service provider for the Panorama/GiftWorks database) on behalf of Cheekwood's Swan Ball Office—not the "Swan Ball Committee." Cheekwood requests that SB Initiative cease contacting Frontstream and misrepresenting this individual's employment status immediately.

Out of respect for the Swan Ball and all who have contributed to its legacy, Cheekwood is reluctant to name the individuals who made these potentially actionable attempts. However, Cheekwood has documented each attempt.

Cheekwood requests that your client and individuals acting in concert with it immediately cease and desist from any further attempts to access any of Cheekwood's systems, platforms, and/or accounts. Such acts may constitute violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "**CFAA**"), exposing SB Initiative and individuals acting in concert with it to additional liability and penalties. Cheekwood reserves all rights to alert law enforcement and initiate civil proceedings in order to secure and recover its data and the personal information of its donors.

**E.      SB Initiative's Request for Clarity and Confirmation**

SB Initiative's letter requests that Cheekwood clarify and confirm its position on certain items regarding SB Initiative's status. Cheekwood's Board of Trustees has voted and confirms as follows:

Cheekwood recognizes SB Initiative, Inc. as a separate entity that is not affiliated with or authorized to act on behalf of Cheekwood.

Cheekwood does not recognize SB Initiative, Inc. as an authorized fundraising agent, assignee, affiliate, or successor-in-interest to Cheekwood's Swan Ball committee or its volunteers.

Cheekwood will conduct all future Swan Ball events and other fundraising efforts on behalf of Cheekwood without SB Initiative, Inc. involvement.

SB Initiative, Inc. is free to engage in all legal operations as it sees fit. However, such operations are not permitted to occur on Cheekwood property or using Cheekwood resources; may not be conducted on behalf of or for the benefit of Cheekwood; may not use Cheekwood's data, digital media, or websites; and may not use Cheekwood's CHEEKWOOD or SWAN BALL trademarks.

SB Initiative, Inc. is not authorized to engage in any activities on behalf of Cheekwood's future Swan Ball events, including, without limitation, the following activities:

1.      Contracting with any vendors on behalf of Cheekwood and its 2025 Swan Ball.

2.      Soliciting donors for fundraising for Cheekwood or its 2025 Swan Ball.

3.      Hosting any planned 2025 Swan Ball fundraising events at Cheekwood or any other venue.

4.      Using Cheekwood facilities or resources (including Cheekwood's Swan Ball office employees, databases, or files).

**F.**     <u>**Demand to Cease and Desist Immediately and Permanently**</u>

The Swan Ball has always been, and continues to be, one of Cheekwood's premiere fundraising events to help support Cheekwood's operations as a nonprofit offering botanical and artistic attractions and experiences to all members of the public. Cheekwood plans to continue to host the annual Swan Ball, and remains committed to working with its dedicated volunteers to protect the future of the Swan Ball by ensuring it adheres to the highest standards of transparency and financial responsibility, while continuing to provide a superlative experience for its donors.

Unfortunately, due to SB Initiative's actions, Cheekwood's Board of Trustees has voted and made the difficult decision to postpone temporarily its 2025 Swan Ball until this legal dispute—and the overarching fiscal concerns—are resolved.

Cheekwood is profoundly disappointed for all of its supporters, donors, underwriters, and vendors, and for the volunteers comprising Cheekwood's 2025 Swan Ball committee, who will be impacted by SB Initiative's choice to instigate an unnecessary and unfounded legal fight.

Your client has embarked on a troubling course of conduct that may expose it, and individuals acting in concert with it, to liability for trademark infringement, unfair competition, deceptive trade practices, tortious interference with business relations, defamation, conversion, and violations of the CFAA.[4]

In order to protect its donors, the Swan Ball, and the public, Cheekwood demands that SB Initiative immediately take the following actions:

1. File an Express Abandonment (Withdrawal) of U.S. application no. 98569484 with the USPTO.

2. Cease and desist from any and all use of Cheekwood's CHEEKWOOD and SWAN BALL marks, including related digital media and websites.

3. Cease all actions for planning Cheekwood's 2025 Swan Ball.

4. To the extent SB Initiative has already contacted or contracted with vendors for Cheekwood's 2025 Swan Ball, notify those vendors in writing that SB Initiative is not authorized to do so, within three (3) business days of the date of this letter.

5. Cease all attempts to access Cheekwood's systems, platforms, accounts, and electronic or paper files, including, without limitation, the Swan Ball Website, the Panorama/GiftWorks database, the Swan Ball MailChimp account, the email address <swanball@cheekwood.org>, and any files stored in Cheekwood's Swan Ball Office.

6. Return all electronic and paper files obtained from Cheekwood's Swan Ball Office.

---

[4] Many if not all of the actions highlighted in this letter were undertaken by individuals without benefit of the liability shield afforded by the recent formation of SB Initiative.

7. Provide a list of (i) SB Initiative's officers, directors, and shareholders, and (ii) all other individuals involved in the potentially infringing and tortious conduct described in the letter.

We require written confirmation of SB Initiative's intent to comply with Cheekwood's requests no later than **July 8, 2024**. Otherwise, Cheekwood will take appropriate steps to enforce its rights and protect the public without further delay or notice.

Cheekwood strongly prefers to resolve this matter amicably, and without the need for further legal action. We trust you will advise your client appropriately. Assuming Cheekwood receives confirmation of the items requested above by July 8, 2024, Cheekwood would welcome a rational conversation with your client about the future of Cheekwood's Swan Ball.

Should SB Initiative persist with its demands, Cheekwood requires the following documents to more fully assess the claims:

1. All documents showing that SB Initiative has used the SWAN BALL mark in commerce on or in connection with charitable fundraising services continuously since at least as early as June 30, 1963;

2. All documents showing the "Swan Ball Committee" has been in continuous existence since at least as early as June 30, 1963, and has helped support the Swan Ball in each of those years;

3. All documents showing the "Swan Ball Committee" owned the SWAN BALL trademark from June 30, 1963 through the date of the alleged assignment to SB Initiative;

4. All documents showing the "Swan Ball Committee" owns the Swan Ball Website, the Panorama/GiftWorks database, the Swan Ball MailChimp account, and Swan Ball donor information;

5. Fully executed copies of any and all purported assignments of trademark rights and other relevant rights from the "Swan Ball Committee" to SB Initiative including proof of signature by each individual committee member that purportedly holds an assignable interest, from 1963 to the present;

6. The IRS tax exemption letter for the "Swan Ball Committee"—from 1963 to present;

7. The formation documents and EIN tax identification number for the "Swan Ball Committee;"

8. All charitable organization registration and renewal forms filed with the Tennessee Secretary of State for the "Swan Ball Committee" from 1963 to present; and

9. All documents confirming that each member of Cheekwood's current Swan Ball committees—including each member of the Swan Ball Advisory Committee—provided appropriate consent to incorporate SB Initiative, transfer alleged property

rights from the committee to SB Initiative, and launch this clandestine attack against Cheekwood.

If such documents are not provided by July 8, 2024, Cheekwood will presume they do not exist.

Neither this letter nor SB Initiative's compliance with the demands herein constitutes a waiver or release of Cheekwood's right to oppose the Application or seek injunctive relief, money damages, or any other remedies. This letter is not a complete statement of all facts, rights, or claims relating to this matter.

We look forward to your prompt response.

Sincerely,

Maia T. Woodhouse

Enclosure

cc:     Cheekwood Board of Trustees



Source: Form 990 for Fiscal Years Ending in 2022

Charity Fundraiser Ratios

Survey In Alphabetical Order:

Andrew Jackson's Hermitage
American Museum of Natural History
Brooklyn Botanic Garden
Centennial Park Conservancy
Central Park Conservancy
Crystal Charity Ball
Dallas Museum of Art
Denver Botanic Gardens
Desert Botanical Garden
Filoli Historic House & Garden
Frist Art Museum
Lincoln Park Zoo
Meridian International Center
Metropolian Museum of Art
Morton Arboretum
Naples Botanical Garden
Nashville Ballet
Nashville Symphony
New York Botanical Garden
Phipps Conservatory
San Antonio Botanical Garden
San Francisco Ballet
Swan Ball
Tennessee Performing Arts Center
Vizcaya Museum & Gardens

Nashville Institutions   Botanic Garden Industry Institutions   National Institutions   The Swan Ball (*)

(*) Average of the last three years the Swan Ball occurred per Form 990: 2019, 2022, 2023

Case 3:24-cv-00821    Document 12-18    Filed 07/30/24    Page 12 of 12 PageID #: 220