IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SB INITIATIVE, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | CIVIL ACTION NO. 3:24-cv-00821 |
| | ) | |
| v. | ) | DISTRICT JUDGE ELI J. |
| | ) | RICHARDSON |
| CHEEKWOOD BOTANICAL GARDEN | ) | MAGISTRATE JUDGE BARBARA D. |
| AND MUSEUM OF ART, | ) | HOLMES |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | JURY DEMAND |
| | ) | |
| | ) | |

**CHEEKWOOD BOTANICAL GARDEN AND MUSEUM OF ART'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST SB INITIATIVE, INC.**

COMES NOW Defendant/Counter-Plaintiff Cheekwood Botanical Garden and Museum of Art ("Cheekwood"), and, pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.01, respectfully moves this Court for entry of a temporary restraining order and preliminary injunction that restrains and enjoins Plaintiff/Counter-Defendant SB Initiative, Inc. ("SBI") and its officers, agents, servants, employees, and attorneys, and any other persons acting in concert with any of the foregoing, from using in any way the trademark SWAN BALL in violation of Cheekwood's registered and common law rights in the SWAN BALL trademark (the "SWAN BALL Mark").[1] In support of this Motion, Cheekwood respectfully states as follows:

The Swan Ball has been Cheekwood's signature event for more than six decades. Named for Cheekwood's Swan Lawn, the Swan Ball was founded in 1962 to raise funds for the then-fledgling Tennessee Botanical Gardens and Fine Arts Center at Cheekwood. Since 1963, the Swan

---

[1] Cheekwood has asserted other causes of action that are not the subject of this Motion, and expressly reserves the right to pursue those claims as this litigation progresses.

Ball has taken place on Cheekwood's Swan Lawn, in front of Cheekwood's Swan Fountain and Petite Swan Fountain, and is universally associated with Cheekwood. Over 60-plus years, the Swan Ball has become so ingrained in Cheekwood's DNA and identity that the Swan Ball points uniquely and unmistakably to Cheekwood.

To protect its longstanding and valuable asset, Cheekwood registered the SWAN BALL trademark in Tennessee in 2004—nearly two decades before SBI (and its lawsuit) existed. Against this long-standing history, SBI is claiming that it has acquired ownership of the SWAN BALL mark from a group of volunteers who previously served on Cheekwood's Swan Ball committees. However, at no time have these volunteers previously claimed that they and not Cheekwood owned the SWAN BALL mark. It was only when Cheekwood attempted to reform the Swan Ball and align it with industry best practices that a newer faction of volunteers concocted a claim of ownership, formed SBI, and launched this litigation.

SBI commenced this action on June 8, 2024, ostensibly to quiet title to ownership of the SWAN BALL mark. Despite its filing, and Cheekwood's counterclaims of infringement, SBI has now publicly confirmed that it will not await this Court's determination, but will continue to flout Cheekwood's registered rights and use the SWAN BALL mark without Cheekwood's authorization, unless and until this Court instructs SBI to cease.

Specifically, Cheekwood recently learned that SBI plans to attend the Metro Parks Board's meeting today, September 3, 2024, to request approval to hold events for a "Swan Ball 2025" at Edwin Warner Park on October 8, 2024 and June 7, 2025. Yoshikawa Decl., *infra*, ¶ 12, Ex. 9. Cheekwood has also learned that, following the Metro Parks Board meeting, SBI plans to announce the details for its alleged 2025 Swan Ball tomorrow on September 4, 2024. Cammack Decl., *infra*, ¶ 4. After that, SBI will undoubtedly target Cheekwood's donors, corporate sponsors,

underwriters, and volunteers to solicit funds as the Swan Ball—if it has not started doing so already.

The imminent Metro Parks Board meeting and SBI's media statements demonstrate the urgent need to enjoin SBI from using Cheekwood's SWAN BALL mark while the case is pending. The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017). The status quo is that Cheekwood owns the Tennessee trademark registration for the SWAN BALL Mark, has registered SWAN BALL as a name used by Cheekwood for charitable solicitations, and has hosted the Swan Ball on Cheekwood's grounds and for Cheekwood's benefit for the past 61 years. The Swan Ball has never been associated with or held for the benefit of any other nonprofit organization. SBI has never participated in the planning of—nor even existed for most of—the past 61 Swan Balls.

In support of this Motion, Cheekwood would show that each of the four preliminary injunction factors are satisfied. First, Cheekwood has established a strong likelihood of success on the merits of its trademark infringement and related claims (Counterclaim Counts I, III, V, VI, and IX) and defense based on SBI's lack of standing because Cheekwood was the first to use and register the SWAN BALL trademark and any and all subsequent use of the mark by volunteers and committees was on Cheekwood's behalf. Second, Cheekwood will suffer significant and irreparable harm in the absence of an injunction. If SBI is allowed to use Cheekwood's SWAN BALL trademark to solicit donors and produce a competing Swan Ball in 2025, Cheekwood will lose control over the goodwill and reputation of its annual Swan Ball fundraising event, jeopardizing donor relationships and future events. The public, including Cheekwood's donors and vendors, will inevitably be confused by SBI's counterfeit event under the same name.

Compensatory damages cannot turn back the clock on the loss of control and damage to Cheekwood's reputation or diminution of Cheekwood's exclusive and registered trademark rights. The avoidance of such confusion is the very purpose of the Lanham Act.

Conversely, SBI will suffer no harm from not using the SWAN BALL trademark. SBI can still hold a white-tie gala for another beneficiary; it would only be precluded from exploiting Cheekwood's SWAN BALL mark to do so. SBI itself has conceded it will incur no harm and can "simply present [SBI's] fundraiser in 2025 using another name." Yoshikawa Decl., *infra*, ¶ 11, Ex. 8. Thus the third factor—the relative balance of harms—weighs heavily in favor of an injunction. Finally, the public interest is served by preventing customer confusion or deception. This factor is especially significant here because charitable contributions are implicated. The status quo for the past 60-plus years is that the Swan Ball has been hosted at Cheekwood to benefit Cheekwood's charitable operations. The public interest is not served by uncertainty and confusion over the Swan Ball, especially when the uncertainty and confusion harm an iconic Nashville nonprofit like Cheekwood.

Because the balance of the factors weighs overwhelmingly in Cheekwood's favor, and in view of Cheekwood's status as a not-for-profit organization, Cheekwood respectfully requests the Court exercise its discretion and waive imposition of a bond.

In support of this Motion, Cheekwood relies on its contemporaneously filed Memorandum of Law in Support; Declaration of Jane MacLeod and exhibits thereto (ECF No. 19); Declaration of Daniel Miller and exhibits thereto (ECF No. 20); Declaration of Jin Yoshikawa and exhibits thereto (ECF No. 21); and Declaration of Lucie Wallace Cammack (ECF No. 23). Cheekwood has also filed a Motion for Expedited Discovery (ECF No. 24) contemporaneously herewith.

WHEREFORE, Cheekwood respectfully requests the Court grant this Motion and enter a temporary restraining order preliminary injunction against SBI, as set forth below:

1. The Court set a date for a temporary restraining order hearing on September 3, 2024, or at the Court's earliest convenience, which is estimated to last no longer than one (1) hour;

2. Entry of a temporary restraining order that SBI, and its officers, agents, servants, employees, attorneys, and anyone in active concert or participation with any of the foregoing from:

   a. Making any unauthorized use of the SWAN BALL Mark, or any reproduction, counterfeit, copy, or colorable limitation thereof, in connection with the sale of any goods or offering of any services;

   b. Manufacturing, distributing, advertising, marketing, promoting, displaying, offering for sale, and/or selling any infringing goods or services, with marks that look confusing similar to any of the SWAN BALL Mark, as well as any other forms of markings, packaging, labels, wrappers, containers, articles, products, displays, signs, circulars, kits, literature, materials, receptacles, catalogs, price lists, promotional materials, or websites and the like bearing any unauthorized, infringing, or otherwise unlawful reproduction, counterfeit, copy, or colorable imitation of the SWAN BALL Mark;

   c. Using any mark, trade dress, design, statement, or representation that may be calculated to falsely represent or that has the effect of falsely representing that the services or products of SBI are in any way sponsored by, originate with, or are associated or approved by Cheekwood;

   d. Falsely representing itself or its goods or services as affiliated with, connected with, associated with, or approved by Cheekwood;

   e. Advertising, marketing, promoting, offering for sale, selling, importing, exporting, distributing, and/or transferring infringing and/or counterfeit goods and services and/or anything confusingly similar thereto, or any reproduction, counterfeit, copy, or colorable imitation thereof, and/or any other unauthorized, infringing, or otherwise unlawful use of the SWAN BALL Mark, through any means whatsoever, including, but not limited to, retail, wholesale, via the Internet, mail order, telephone, or any other method of interstate or intrastate commerce;

   f. Doing any other act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, including prospective customers of Cheekwood, as to the source of the goods or services offered, distributed, marketed, advertised, or sold by SBI, or as to whether there is a connection between Cheekwood and SBI; and

g. Assisting, aiding, or abetting any other person or entity in engaging in any of the activities set forth in paragraphs (a) through (f) above

3. Upon entry of such an Order, SBI be required to file with this Court and serve on Cheekwood within forty-eight (48) hours after the service of the Order, a report in writing under oath, setting forth in detail the manner and form in which SBI has complied with the Order;

4. The Court permit the parties to immediately commence expedited discovery related to the claims made in Cheekwood's Motion for Temporary Restraining Order and Preliminary Injunction;

5. The Court grant leave for Cheekwood to file a supplemental memorandum in further support of its request for preliminary injunction upon entry of a temporary restraining order and conclusion of expedited discovery;

6. The Court enter a briefing schedule setting forth deadlines for SBI to respond to this Motion; to exchange expedited discovery; to disclose fact and expert witnesses; and to permit the exchange of expert reports, if any;

7. The Court set a preliminary injunction hearing at the Court's convenience, which is estimated to last approximately one to two days;

8. The Court enter a preliminary injunction that SBI, and its officers, agents, servants, employees, attorneys, and anyone in active concert or participation with any of the foregoing, be forthwith preliminarily restrained and enjoined during the pendency of this lawsuit, from:

    a. Making any unauthorized use of the SWAN BALL Mark, or any reproduction, counterfeit, copy, or colorable limitation thereof, in connection with the sale of any goods or offering of any services;

    b. Manufacturing, distributing, advertising, marketing, promoting, displaying, offering for sale, and/or selling any infringing goods or services, with marks that look confusing similar to any of the SWAN BALL Mark, as well as any other forms of markings, packaging, labels, wrappers, containers, articles, products, displays, signs, circulars, kits, literature, materials, receptacles, catalogs, price lists, promotional materials, or websites and the like bearing

any unauthorized, infringing, or otherwise unlawful reproduction, counterfeit, copy, or colorable imitation of the SWAN BALL Mark;

c. Using any mark, trade dress, design, statement, or representation that may be calculated to falsely represent or that has the effect of falsely representing that the services or products of SBI are in any way sponsored by, originate with, or are associated or approved by Cheekwood;

d. Falsely representing itself or its goods or services as affiliated with, connected with, associated with, or approved by Cheekwood;

e. Advertising, marketing, promoting, offering for sale, selling, importing, exporting, distributing, and/or transferring infringing and/or counterfeit goods and services and/or anything confusingly similar thereto, or any reproduction, counterfeit, copy, or colorable imitation thereof, and/or any other unauthorized, infringing, or otherwise unlawful use of the SWAN BALL Mark, through any means whatsoever, including, but not limited to, retail, wholesale, via the Internet, mail order, telephone, or any other method of interstate or intrastate commerce;

f. Doing any other act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, including prospective customers of Cheekwood, as to the source of the goods or services offered, distributed, marketed, advertised, or sold by SBI, or as to whether there is a connection between Cheekwood and SBI; and

g. Assisting, aiding, or abetting any other person or entity in engaging in any of the activities set forth in paragraphs (a) through (f) above.

9. Upon entry of such an Order, SBI be required to file with this Court and serve on Cheekwood within thirty (30) days after the service of the Order, a report in writing under oath, setting forth in detail the manner and form in which SBI has complied with the Order;

10. The requirement of a bond to enforce the temporary restraining order and/or preliminary injunction for the pendency of this lawsuit be waived; and

11. Such other relief that the Court deems just and proper.

7

## LOCAL RULE 7.01 CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.01 (a)(1), the undersigned hereby certifies that she attempted to confer with counsel for SB Initiative, Inc. ("SBI") on the relief requested but the parties have been unable to confer. The undersigned contacted counsel for SBI by telephone on Friday, August 30, 2024, at approximately 9:30am and left a message, and followed up by email at 4:36pm. As of the time of this filing, the undersigned has not received a response but will supplement this certification with SBI's position on the relief requested once confirmed.

SBI further has notice of this filing by virtue of the Court's CM/ECF filing system.

Dated this 3rd day of September 2024.

**ADAMS AND REESE LLP**

/s/ Maia T. Woodhouse
Maia T. Woodhouse, TN BPR No. 030438
Jin Yoshikawa, TN BPR No. 038385
1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
Tel: (615) 259-1450
Fax: (615) 259-1470
maia.woodhouse@arlaw.com
jin.yoshikawa@arlaw.com

*Attorneys for Defendant/Counter-Plaintiff Cheekwood Botanical Garden and Museum of Art*

.

8

Case 3:24-cv-00821   Document 17   Filed 09/03/24   Page 8 of 9 PageID #: 345

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2024, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

Chanelle Acheson
Jack Waddey
WADDEYACHESON
1030 16th Avenue South
Suite 165, Second Floor
Nashville, Tennessee 37212
Tel: (615) 839-1100
Email: chanelle@waddeyacheson.com
jack@waddeyacheson.com

/s/ Maia T. Woodhouse
Maia T. Woodhouse