Statement for SB Initiative Board Members

I, Beth C. Alexander have been involved with the Swan Ball Committee since the late 1970s. I have served on numerous Committees (and have attached a letter describing my involvement). Just a few are:

- Chairmen of the Arrangements Committee since 2019
- Mini Committee since 2019
- Executive Committee since 2019
- For the sake of time, I have attached a letter describing my history with Swan Ball

I was Co-Chairman of the Swan Ball Gala in the year 2018.

I joined the Executive Committee of the Swan Ball Committee in 2019. The Executive Committee was the decision-making body of the Swan Ball Committee, comprised of former Swan Ball Chairmen. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI). I still serve on the Board of SBI.

My exposure to the Executive Committee has been since 2019. During this time,

a. The Executive Committee has been the only body that makes large decisions for Swan Ball.
b. The selection for, and membership on, the Executive Committee has followed set procedures.
c. No Cheekwood employee or representative serves on the Executive committee, nominates members for the committee, attends the meetings or has voting rights.
d. Jane MacLeod did not attend meetings of the Swan Ball Executive Committee.

In late 2022, Cheekwood leadership began to <u>attempt</u> to direct the Swan Ball Executive Committee with a list of Standard Operating Procedures. To my knowledge, no one on the Executive Committee signed a document with Cheekwood agreeing to allow them to direct our business.

During 2023, meetings were held between Swan Ball Executive Committee reps and members of Cheekwood's leadership team for Cheekwood to discuss their expectations related to Swan Ball performance and for Swan Ball to ask questions about assumptions and calculations regarding review metrics. These questions were never satisfactorily answered.

All guests who attend the Swan Ball are by invitation only. As I have been Chairman of the Invitations Committee since 2019, I am attaching a STATEMENT as to how this process works. No member of Cheekwood attends the committee meetings or can request/require an addition to the list without following procedures.

In my Swan Ball roles, I have reported to the Mini-Committee or Executive Committee. My reporting structure never involved reporting to Cheekwood.

I understand that Cheekwood now characterizes the Swan Ball Committee as an 'unincorporated fund-raising agent' of Cheekwood – I have never heard that characterization

previously. To my knowledge, Swan Ball has always operated independently, not under the control of Cheekwood.

I was asked to Chair the Swan Ball by the Nominating Committee – no employee of Cheekwood was present.

My co-Chairman and I controlled the nature and quality of that beautiful event, with a team of dedicated vendors, with whom we contracted, in 2018.

When we needed guidance, we consulted our advisors and the Mini Committee.

I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_____Beth C. Alexander_____ Name

_____Beth C. Alexander_____ Signature

Executed on ___9-6-24___ (date).

Statement for SB Initiative Board Members

I, Elizabeth L. Nichols have been involved with the Swan Ball Committee since the mid-1980's. I have served the Committee in the following capacities:

- Co-chairman of Swan Tale (clean up committee in 1986)
- Hosted (paid for) the Friday night party for the Swan Ball Volunteer Committee, then known as the "Worker's Party" – 200+/- people celebrated at a seated dinner under a tent at our home in 1987
- Swan Ball Patron since 1987
- Co-Chairman Swan Ball Auction 'Items' in 1988
- Co-Chairman Swan Ball Auction 1990
- Co-Hosted Patrons Party in 1999
- ADVISORY COMMITTEE FROM 2005
- Chairman Dance Committee – 2014 – 2016
- Chairman Nominating Committee 2014 – PRESENT
- Mini-Committee Member 2014 – Present
- Executive Committee Member 2014-Present
- Chairman Advisor – 2012, 2014, 2015, 2016, 2017, 2018, 2020, 2021, 2022, 2023, 2025 (upcoming)
- Co-Hosted Patrons Party in 2022

I was a Chairman of the Swan Ball gala in the year 2005.

- I joined the Executive Committee of the Swan Ball Committee in 2014 . The Executive Committee was the decision-making body of the Swan Ball Committee and was comprised of former Swan Ball Chairmen. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI. I now serve in the same capacity as previously on the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee. Additionally, I now serve as co-chairman of the Board of Directors of SBI.
- I understand the Executive Committee has been for decades the only body that makes large decisions for the Swan Ball.
- During my year as a Chairman of Swan Ball (2005) and in subsequent years:
  a. The Executive Committee has been the only body that makes large decisions for Swan Ball.
  b. The selection for, and membership on, the Executive Committee has followed set procedures.
  c. No Cheekwood employee or representative has been involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee.

    d. No employee of Cheekwood has been a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings.

    e. To my knowledge, at no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative, with the following exceptions: I

- In the months preceding Swan Ball 2021, we worked with Cheekwood CEO to discuss optional locations on the Cheekwood campus to provide for social distancing due to Covid -19. The Executive Committee members in collaboration with the 2021 Swan Ball Chairs eventually decided to cancel Swan Ball 2021 before vendor contracts were signed by the 2021 Swan Ball Chairman.

- In late 2022, Cheekwood leadership began to attempt to direct the Swan Ball Executive Committee as to what the Standard Operating Procedures for Swan Ball should be; to my knowledge, there was never any signed agreement between the two parties (Swan Ball Executive Committee and Cheekwood) related to these 'directives'.

- During my time as a member of the Executive Committee, Jane MacLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. On several occasions representatives from the Executive Committee met with Ms. MacLeod to respectfully coordinate fund-raising efforts; additionally, since 2022 representatives from the Executive Committee have met with Ms. MacLeod to discuss her dissatisfaction with the performance of Swan Ball and to request clarification around ratio calculations and underlying assumptions.

- During my time as a member of the Executive Committee, Ms. MacCleod made the following request to the 2024 Swan Ball Chairmen, who requested approval from the Swan Ball Mini-Committee and Executive Committee:
  - The request from Ms. MacLeod was that The Swan Ball put a solicitation card into the envelope of the formal Swan Ball invitation, requesting separate donations to Cheekwood to replace numerous boxwoods around the Cheekwood grounds – this was denied by a vote of the Executive Committee.

- During my time as Swan Ball Chairman (2005), Jack Becker, Cheekwood CEO, made the request to my co-chairman and me to release funds in the spring of 2005, before the Swan Ball (approximating, $75,000-$100,000) to repair roof leaks. My co-chairman and I presented this request to the Mini-committee and the request was ultimately approved by the Executive Committee. Jack Becker, made this request as he did not have the ability or authority to demand, institute, or authorize these actions, as the sole purview of the Swan Ball Committee.

- During my time as a member of the Executive Committee, Ms. MacLeod requested the 2019 Swan Ball Chairmen release funds early from the upcoming 2019 Swan Ball to pay for driveway repairs necessary to access the back of the Cheekwood mansion. This request was submitted by the 2019 Swan Ball Chairmen to the Mini and Executive committees and the request was approved. Ms. MacLeod made this request as she did not have the ability

or authority to demand, institute, or authorize these actions, as the sole purview of the Swan Ball Committee.

- During my time as a member of the Executive Committee and Advisor to a 2020 Swan Ball Chairman, Dan Miller, Cheekwood CFO, requested that 2020 funds be released early to Cheekwood due to pressures on their operation resulting from COVID-19. This was approved by the Executive Committee. Mr. Miller made this request as he did not have the ability or authority to demand, institute, or authorize these actions, as the sole purview of the Swan Ball Committee.

- As Co-Chairman of Swan Ball 2005, I learned that all guests have attended the Swan Ball by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the approval of the Swan Ball Arrangements Committee. Cheekwood was permitted to submit names for consideration by the Arrangements Committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with this Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.

- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.

- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund-raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.

- During my time on the Executive Committee, it is my understanding that the Swan Ball event used vendors that were not included on the "approved vendors" list promulgated by Cheekwood, and that Cheekwood was aware of this and did not object.

- As to my invitation to co-chair the 2005 Swan Ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen and members of the Advisory Committee. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting one of the members of the Nominating Committee.

- My Co-Chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.

- Contrary to Ms. McLeod's sworn statement, when I was Co-Chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with the CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on the Swan Ball entertainment or the Swan Award recipient from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any the



above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

- Also contrary to Ms. McLeod's sworn statement, in 2005, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking, transportation, lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee. In fact, in 2005 I don't believe there was a COO.
- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.
- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics in the mansion or on the grounds.
- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to or signatory authority on this account.
- Tim Kovick of Corporate Communications designed the Swan Ball logo used for the year I Co-Chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, during the 2005 Swan Ball year, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from decisions related to the physical plant.

Although my co-chairman and I had a very friendly relationship with Jack Becker, CEO of Cheekwood in 2005, I recall only three significant topics we discussed:

- We asked Mr. Becker what the exhibit would be in the upstairs galleries at Cheekwood on the evening of our Swan Ball; as it was a Halston exhibit, that inspired the design of our Swan Ball.
- Two donors agreed to curate a Halston 'dinner party' in the dining room at Cheekwood. As this required adjustments (moving of decorative items) inside the mansion, we requested approval to use this space from Mr. Becker, which was granted.
- As stated above, Mr. Becker requested an early payment in the spring of 2005 to repair roof leaks on the Cheekwood Mansion in order to have the repairs done by the evening of the

Swan Ball. We requested permission of our Mini-Committee who took it to our Executive Committee for approval. Approval was granted.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_____ Name

Elizabeth L. Nichols _____ Signature

Executed on 9-5-24 (date).

Statement for SB Initiative Board Members

I, Jana Joustra Davis, have been involved with the Swan Ball Committee since 2004. I have served the Committee in the following capacities: PR Committee member, 2004; Auction co-chair, 2005; Patron party co-host, 2017; Mini Committee member, 2019-2021. I was a Chairman of the Swan Ball gala in the year 2019.

- The Executive Committee of Swan Ball was the decision making body of the Swan Ball Committee. I joined the Board of Directors of SBI, the successor-in-interest to the Swan Ball Executive Committee, in July of 2024.

- The Executive Committee has been for decades the only body that makes material decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.

- Specifically, Jane MacLeod was not a member of the Executive Committee, did not attend the meetings, nor was she invited to attend the meetings. It is my understanding that at various time Ms. MacLeod requested to be a member of the Executive Committee or included in the meetings and was denied.

- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee decision, nor did Cheekwood have the authority to do so.

- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee. During my time as chairman of Swan Ball 2019, Ms. MacLeod suggested that "since [my co-chair and I] were such big supporters of Cheekwood, perhaps this should be the year when the Swan Ball was rolled under" her. I made it clear that while we would be happy to keep her in the loop regarding our progress on the Ball, we did not intend to report to her. The conversation ended abruptly.

- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation FROM THE SWAN BALL COMMITTEE ONLY. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.

- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.
- I understand Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as far as my knowledge goes, the Swan Ball Committee always has operated independently, not under the control of Cheekwood.
- It is my understanding that the Swan Ball event used vendors that were not included on the "approved vendors" list promulgated by Cheekwood, and that Cheekwood was aware of this and could not object.
- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting, which was held at my home and attended by approximately a dozen former Swan Ball chairs, including members of the Nominating Committee. I accepted the nomination in their presence, and assume Cheekwood employees learned of this decision from some of those present.
- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.
- Contrary to Ms. MacLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with the CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.
- Also contrary to Ms. MacLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend *any* pre-production or production meetings with event planners, did not review plans, policies or conflicts, did not advise on access or vendor guidelines, parking, transportation, lighting or sound etc. No employee of Cheekwood had approval or veto authority over any of the above. All of this remained the sole purview of the co-chairs or the Executive Committee.
- If my co-chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.
- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).
- My co-chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the

contracts prior to their execution, nor was any Cheekwood employee a party to the contracts or bound by the terms of the contracts.

- A volunteer treasurer opened a bank account for the use of our ball year only. Only my co-chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.
- Either my co-chairman, a member of the Swan Ball volunteer committee, or I approved all design matters and information represented on the website. No Cheekwood employee had any input, involvement, approval or denial authority in the design of the website. In recent years, it should be noted that Cheekwood asked to review any language on the Swan Ball website specific to Cheekwood.
- Stephanie Simpkins, an independent contractor retained by my co-chair and me on behalf of the 2019 Swan Ball, designed the Swan Ball logo used for the year we chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

JANA JOESTA DAVIS Name

_____ Signature

Executed on 9/4/24 (date).

Statement for SB Initiative Board Members

I, Jean Bottorf, have been involved with the Swan Ball Committee since 1987. I have served the Committee in the following capacities Auction Committee Member, Printing, Nominating Committee – Chair, Mini-Committee – Chair, Hosts for Swan Award Recipient, Patron, Swan Ball Co-Chair, Swan Ball Representative to Cheekwood, and Advisory Committee. I was a Chairman of the Swan Ball gala in the year 1986.

- I joined the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee on July, 2024.
  - The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.
- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. Ms. McLeod asked to help select Chairmen the year she came to Cheekwood
- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee.
- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee. Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.
- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.
- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.

- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.

- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.

- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any of the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend "any" pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.

- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.

- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).

- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.

- Eric Ericson & Associates designed the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.

- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.

- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.
- Shortly after Jane MacLeod came to Nashville, she phoned me and invited me to have lunch with her. I had not met her so was happy to have lunch and discuss what I thought would be Cheekwood and her new job. However, her questions that day were more about Swan Ball. At the time, I chaired the nominating committee for the selection of Swan Ball chairs and I think perhaps that was why I was invited to lunch that day. To the best of my recollection, Jane said she was interested in getting more involved with Swan Ball and asked me questions about how the chairs were chosen and whether she could help. As I remember, suggested she get to know Cheekwood and her new community better and leave the Swan Ball to the advisory committee, as the Swan Ball had been running very well for a long time, and the advisory committee would continue to select the chairs. I remember Jane MacLeod's interest in controlling the Swan Ball being discussed numerous times at our full advisory committee meetings and Jane Dudley's response was always "this will never happen."

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_____Jean Bottorff_____Name

_____ Signature

Executed on _____9/5/2024_____ (date).

Statement for SB Initiative Board Members

I, _____Jennie McCabe_____, have been involved with the Swan Ball Committee since _1993_____. I have served the Committee in the following capacities __Dinner Committee, Traffic Committee, Jewelry Committee, List Committee, Auction Committee, Hosted Auction Dinner, Co- hosted Chairmans Party, Co-hosted Patrons Party, Co-Co-chairman of the Patrons Party,  member of Mini Committee, Member of Advisory Committee, Member of Executive Committee. I  was a Chairman of the Swan Ball gala in the year __2004_____.

- I joined the Executive Committee of the Swan Ball Committee in  August 2016. The Executive Committee was the decision making body of the Swan Ball Committee. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI. I now serve in the same capacity as previously on the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee. [For Elizabeth and Kathryn: I now serve as co-chairman of the Board of Directors of SBI.]
- The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.
- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. It is my understanding that at various time Ms. McLeod requested to be a member of the Executive Committee or included in the meetings and was denied.
- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.
- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee. During my time as member of the Executive Committee and member of the Mini Committee -Jane McLeod made the following requests to the Swan Ball Committee that were **denied**:
  - **Requests**- Jane McLoed requested that we ask for donations to replace the damaged boxwoods in our 2024 Swan Ball invitation mailing.
  - 
- During my time as [chairman/a member of the Executive Committee, Patrons Committee, Arrangements committee- include as applicable] Cheekwood, via [name if applicable] made the following requests to the Swan Ball Committee that were

**approved** by vote of the Executive Committee. Cheekwood made these requests as it did not have the ability or authority to demand, institute or authorize these actions, as the sole purview of the Swan Ball Committee:

  o Requests

- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.
- At no time during my involvement in a leader-ship role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.
- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.
- During my time on the Executive Committee, it is my understanding that the Swan Ball event used vendors that were not included on the "approved vendors" list promulgated by Cheekwood, and that Cheekwood was aware of this and did not object.
- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.
- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.
- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.
- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend *any*

pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.

- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.
- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).
- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.

For the 2004 Ball we used a Swan Ball logo that we found in the office

- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

Jennie McCabe _____ Name

Jennie McCabe _____ Signature

Executed on __9/5/2024__ (date).

## Statement for SB Initiative Board Members

I, _____Julia C. Stadler_____, have been involved with the Swan Ball Committee since 1987_____. I have served the Committee in the following capacities : Chairman of Dance Committee, Late Party, Gentlemen's Committee, Jewelry, Traffic, Staff Suppers, and _Favors,. I was also a member of the Mini Committee for several years and a party Host for the Chairman's Party, the Underwriter Party, the Jewelry Party ,the Luncheon and the Patron's Party._. I  was a Chairman of the Swan Ball gala in the year __2003_____.

- I joined the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee on July 30, 2024].
- The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.
- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. It is my understanding that at various time Ms. McLeod requested to be a member of the Executive Committee or included in the meetings and was denied.
- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.
- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee.
- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.
- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.

- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.
- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.
- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.
- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.
- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend *any* pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.
- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.
- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).
- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.

- [If applicable], _____N/_A_____(name of web company) either updated or redesigned the Swan Ball website used for the year I chaired the Ball. Either my co-chairman, a member of the Swan Ball volunteer committee, or I approved all design related matters and information represented on the website. No Cheekwood employee had any input, involvement, approval or denial authority in the design of the website. In recent years, it should be noted that Cheekwood asked to review any language on the Swan Ball website specific to Cheekwood.
- Mike King of Corzine's designed the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.
- Additional: Please include below any relevant facts related to the above.

**The year Laurel Buntin and I chaired the Ball, we decided to move the Auction out of the Ball evening and made it a separate event that was held at Loews Vanderbilt Hotel. This big decision was made with the approval of the mini committee. The Auction has remained a stand alone event since then.**

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

Julia C Stadler

_____Name

_____Signature

Executed on _____9/5/24_____ (date).

## Statement for SB Initiative Board Members

I, Julie W. Walker, have been involved with the Swan Ball Committee since 1995. I have served the Committee in the following capacities: Production Committee, Auction Chair (2004), Corporate Underwriters' Party Chair (2005), Swan Award Chair (2005-2012), Advisory Committee (2013-present), Staff Liaison, Mini Committee, Patrons Committee, and Reservations Committee. I was a Chairman of the Swan Ball gala in the year 2013.

- I joined the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee in July 2024. I have never served on the Executive Committee.
- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.
- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.
- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fundraising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.
- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.
- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.
- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with the CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend any pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking, transportation, lighting or sound etc. No employee of Cheekwood had approval or veto authority over any of the above. All of this remained the sole purview of the Co-Chairs or the Executive Committee.
- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.
- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).
- My Co-Chairman and/or I signed all contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.
- Stephanie Gambill Simkin (S. Gambill Design) either updated or redesigned the Swan Ball website used for the year I chaired the Ball. Either my co-chairman, a member of the Swan Ball volunteer committee, or I approved all design related matters and information represented on the website. No Cheekwood employee had any input, involvement, approval or denial authority in the design of the website.
- Stephanie Gambill Simkin (S. Gambill Design) designed the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

Julie W. Walker _____ Name

Julie W Walker _____ Signature

Executed on 9/5/24 (date)

Statement for SB Initiative Board Members

I, _____Karyn Frist_____, have been involved with the Swan Ball Committee since ____1993____. I have served the Committee in the following capacities ___Mini committee and Executive CommitteePatrons, Late, Arrangements, etc. Please Chair of any of these committees unless confidential____. I was a Chairman of the Swan Ball gala in the year _____1993___.

- I joined the Executive Committee of the Swan Ball Committee in 2017 . The Executive Committee was the decision making body of the Swan Ball Committee. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI. I now serve in the same capacity as previously on the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee. For Elizabeth and Kathryn: I now serve as co-chairman of the Board of Directors of SBI.

- [Or, for those that joined the board after the formation of SBI, delete previous paragraph and leave: I joined the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee on 06/2024.

- The Executive Commitee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.

- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. It is my understanding that at various time Ms. McLeod requested to be a member of the Executive Committee or included in the meetings and was denied.

- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.

- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee. During my time as member of the Executive committee  a request for boxwoods was ;made September 16 and denied Cheekwood, via [name if applicable] made the following requests to the Swan Ball Committee that were **denied**:
    - Requests

- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO,

have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.

- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.

- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.

- During my time on the Executive Committee, it is my understanding that the Swan Ball event used vendors that were not included on the "approved vendors" list promulgated by Cheekwood, and that Cheekwood was aware of this and did not object.

- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.

- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.

- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend *any* pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.

- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-

Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.

- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).
- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_____Karyn Frist_____Name

_____Karyn Frist_____Signature

Executed on _____September 5 2024_____ (date).

Statement for SB Initiative Board Members

I, Kathleen Estes, have been involved with the Swan Ball Committee since ___1986___. I have served the Committee in the following capacities ___ [Dance Committee (chair) Late Party (Chair) Patrons, Nominating, Mini committee (Chaired) arrangements Committee, Executive Committee (Chaired)_. I was a Chairman of the Swan Ball gala in the year ___2015___.

- I joined the Executive Committee of the Swan Ball Committee in [2022] . The Executive Committee was the decision making body of the Swan Ball Committee. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI. I now serve on the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee. [For Elizabeth and Kathryn: I now serve as co-chairman of the Board of Directors of SBI.]

- The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.

- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings.

- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.

- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee. During my time as (the chairman of the Executive Committee) Cheekwood, via [The Mini committee) made the following request to the Swan Ball Committee that were **denied**:

Request: Ms. McLeod asked the 2024 Chairman to add additional fundraising efforts for the replacement of the damaged Boxwoods, during the freeze of 2022. Mini committee brought it to the executive committee.  It was discussed in the executive committee and it was denied.

- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was

permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.

- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.

- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.

- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.

- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.

- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend *any* pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.

- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.

- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).

- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.
- Stephanie Simpkins of Stone and Steel Creative updated the Swan Ball website used for the year I chaired the Ball. Either my co-chairman, a member of the Swan Ball volunteer committee, or I approved all design related matters and information represented on the website. No Cheekwood employee had any input, involvement, approval or denial authority in the design of the website. In recent years, it should be noted that Cheekwood asked to review any language on the Swan Ball website specific to Cheekwood.
- My co-chair and I chose the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_Kathleen Jackson Estes_____  Name

[signature]  Signature

Executed on 9/5/24

## Statement for SB Initiative Board Members

I, __Kathryn C. Brown_____, have been involved with the Swan Ball Committee since _____1986__. I have served the Committee in the following capacities ___dance committee, late party, swan song, chairman's party(co hosted), nominating committee, auction committee, patrons committee, jewelry party host, reservations committee, Mini committee, patron party host(at our home) 2016,2023,2024, executive committee2019-to present day. I was a Chairman of the Swan Ball gala in the year ___2008_____.

- I joined the Executive Committee of the Swan Ball Committee  for swan ball 2019] . The Executive Committee was the decision making body of the Swan Ball Committee. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI.  I now serve as co-chairman of the Board of Directors of SBI.
- The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.
- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. It is my understanding that at various time Ms. McLeod requested to be a member of the Executive Committee or included in the meetings and was denied.
- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.
- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee. During my time as a member of the Executive Committee, Patrons Committee, and Mini committee.] Cheekwood,  made the following requests to the Swan Ball Committee that were **denied**:
  - Requests: jane mccloud requested in 2024 that a solicitation  be included in the invitatin  asking for donations to replace/REFURBISH THE BOXWOODS THAT WERE LOST IN THE FREEZE OF 2022. She explained that cheekwood didn't have the money in the budget to replace the landscaping. This was denied
- During my time as [chairman/a member of the Executive Committee, Patrons Committee and mini committee  Cheekwood, CEO Jane Mc cloud made the following requests to the patrons committee to consider certain couples for the Patrons list. Sometimes these were

approved and other times they were not. Cheekwood made these requests as it did not have the ability or authority to demand, institute or authorize these actions, as the sole purview of the Swan Ball Committee:

- o **Requests**
- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.
- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.
- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.
- During my time on the Executive Committee, it is my understanding that the Swan Ball event used vendors that were not included on the "approved vendors" list promulgated by Cheekwood, and that Cheekwood was aware of this and did not object. An example of this Bradfield stage lighting
- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.I was asked to co-chair the 2008 Swan Ball along with my sister, Edie Johnson, at the home of our sister Julie Stadler. There was a host of past Swan Ball Chairs present to make the ask of my sister and myself. Therre was no cheekwood employee or representative present.
- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, who was Reed Mc Elvane with Renny and Reed of NYC and Palm Beach. the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.
- Ms. McLeod's was not the CEO when i co-chaired the ball but Jack Becker was. I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the

- Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.
- During our year Jack Becker COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend *any* pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.
- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.
- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).
- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.
- [If applicable], __Mike King_____ designed the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.
- Additional: Please include below any relevant facts related to the above. [Jean Bottorf, Jana, this is where you would include your conversations with JML re taking over the ball, etc.]

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_____Kathryn C. Brown_____ Name

_____Kathryn C Brown_____ Signature

Executed on _Sept 5, 2024_ (date).

Statement for SB Initiative Board Members

I, _____Laurel Buntin_____, have been involved with the Swan Ball Committee since _____the 1990s____. I have served the Committee in the following capacities ____[IN the early 90's I chaired the Auction Preview Party, I have served as Chair of Patrons since 2013. I have served on Advisory and Mini COmmittees since 2003. Not, every year on Mini, but quite a few and currently serve on MIni My husband and I have been Underwriters and Patrons almost every year since 2003 . We have always been asked to contribute in those ways by Swan Ball chairs or volunteers, never by Cheekwood. I  was a Chairman of the Swan Ball gala in the year _____2003___.

·   I joined the Executive Committee of the Swan Ball Committee in September 2016 to the best of my recollection. The Executive Committee was the decision making body of the Swan Ball Committee. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI. I now serve in the same capacity as previously on the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee. [For Elizabeth and Kathryn: I now serve as co-chairman of the Board of Directors of SBI.]

·   The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.

·   Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings.

·   Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.

·   Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee. During my time as member of the Executive Committee, Patrons Committee, Cheekwood, via Jane MacLeod made the following requests to the Swan Ball Patron Committee that were **denied**:

o Requests In 2013 and 2014 Jane had Patrons nominations that were denied by our committee. Some were also approved. In 2024, we denied her request and she asked me to have the committee reconsider. We called a special meeting and ultimately approved her request. She never served on the committee.

· During my time as , Patrons Chair, Cheekwood, via Jane MacLEod made the following requests to the Swan Ball Committee that were **approved** by vote of the Patron Committee. Cheekwood made these requests as it did not have the ability or authority to demand, institute or authorize these actions, as the sole purview of the Swan Ball Committee:

o Requests I, or my cochair, have reached out to Jane each year to see if she had any Patron nominations. Some years she had no recommendations. Most years , we approved her recommendations...I can provide my notes from meetings since 2013 if you would like to see specifics.

· During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.

· At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.

· I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.

· As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.

· My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.

Julie Stadler and I, in 2003, to move the Auction from the Ball to become its own party. This was discussed with and approved by mini.

· Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with the CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

Please see my notes regarding Patrons

· Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend "any" pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.

· If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.

· At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).

· My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.

· A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.

· _____Mike King_____ designed the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.

· I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.

· To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_____Laurel Buntin_____Name

_____Laurel Buntin_____Signature

Executed on _____9-05-24_____ (date).

Statement for SB Initiative Board Members

I, Peggy Kinnard, have been involved with the Swan Ball Committee since 1993. I have served the Committee in the following capacities Swan ball Chairman, Swan Ball Auction Chairman, Chairman of Mini Committee, Chairman of Executive Committee, Swan Ball Representative to The Cheekwood Board of Directors, Swan Ball Nominating Committee, Co- Host of Swan Ball Chairmen's Party, Co-Host Swan Ball Out of Town Luncheon in our home, Chairman of Underwriter's Party, Swan Ball Advisory Committee since 2014, Chairman of Jewelry Committee, Patron's Committee which is responsible for securing Patrons each year. I was a Chairman of the Swan Ball gala in the year 2014.

- I joined the Executive Committee of the Swan Ball Committee in 2019. The Executive Committee was the decision-making body of the Swan Ball Committee. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI. I now serve in the same capacity as previously on the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee. [For Elizabeth and Kathryn: I now serve as co-chairman of the Board of Directors of SBI.]

- The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.

- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. It is my understanding that at various time Ms. McLeod requested to be a member of the Executive Committee or included in the meetings and was denied.

- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.

- Cheekwood did not have the authority to direct the decisions of the Swan Ball Executive Committee.

- During Covid, I was Chairman of the Swan Ball Executive Committee. In 2019 and 2021 the Executive Committee voted to suspend the Ball but continued to raise funds from our supporters. We were able to contribute an average of 1,000.000. dollars each year of Covid shutdown without having the Swan Ball. The Swan Ball Executive Committee made all decisions relative to the cancellation, fundraising efforts and future scheduling of Swan Ball

when and if Covid restrictions were lifted. During this time, Jane McCloud suggested that rather than canceling the Swan Ball, the Executive Committee come up with a plan that fell within government guidelines for gathering in large numbers. The Executive Committee voted to cancel the Swan Ball but continue to ask our supporters to contribute, which they did.

- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee. Cheekwood was not represented on that committee nor invited to the meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.

- At no time during my involvement in a leadership role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.

- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund-raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.

- During my time on the Executive Committee, it is my understanding that the Swan Ball event used vendors that were not included on the "approved vendors" list promulgated by Cheekwood, and that Cheekwood was aware of this and did not object.

- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.

- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.

- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any of the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend \*any\* pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any of the above. All of this remained the sole purview of the co-chairs or the Executive Committee.
- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.
- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).
- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to their execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.
- My Co Chairman and I either updated or redesigned the Swan Ball website used for the year I chaired the Ball. Either my Co-chairman, a member of the Swan Ball volunteer committee, or I approved all design related matters and information represented on the website. No Cheekwood employee had any input, involvement, approval or denial authority in the design of the website. In recent years, it should be noted that Cheekwood asked to review any language on the Swan Ball website specific to Cheekwood.
- My Co-Chairman and I designed the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not, at any time, believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

Peggy Kinnard _____ Name

_Peggy Kinnard_ _____ Signature

Executed on _9/5/24_

Statement for SB Initiative Board Members

I, _____ Sissy Wilson _____, have been involved with the Swan Ball Committee since ___1986___. I have served the Committee in the following capacities ___[Dance Committee (1986), Patron (1992- Present), Mini Committee Chair (2015), Nominating Committee , Auction Committee, Jewelry Party Host, Swan Bal Kick off Host, Patron Party Host, Reservations Committee, Luncheon Party Host, I -was a Chairman of the Swan Ball gala in the year _2010_____.

- I joined the Executive Committee of the Swan Ball Committee in 2015. The Executive Committee was the decision making body of the Swan Ball Committee. I was a member of the Executive Committee of the Swan Ball when that body voted unanimously to form SB Initiative, Inc. (SBI) as the formal incorporation of the independent Swan Ball Committee and to assign all right, title, and interest in the SWAN BALL mark held by the Swan Ball Committee to SBI. I now serve in the same capacity as previously on the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee. [For Elizabeth and Kathryn: I now serve as co-chairman of the Board of Directors of SBI.]

- [Or, for those that joined the board after the formation of SBI, delete previous paragraph and leave: I joined the Board of Directors of SBI, the successor-in-interest to the Swan Ball Committee on July 2024.

- The Executive Committee has been for decades the only body that makes large decisions for the Swan Ball. Selection for, and membership on, the Executive Committee has followed a set procedure for as long as I have been involved with the Swan Ball. No Cheekwood employee or representative is involved in the nomination of, voting for, or any other aspect of membership on the Executive Committee. No employee of Cheekwood was ever a member of the Executive Committee, nor was any employee of Cheekwood invited to or present at Executive Committee meetings. At no time did the Executive Committee consult, request permission, report to, or were subject to the authority of a Cheekwood employee or representative.

- Specifically, Jane McLeod was not a member of the Executive Committee, did not attend the meetings, nor was invited to attend the meetings. It is my understanding that at various time Ms. McLeod requested to be a member of the Executive Committee or included in the meetings and was denied.

- Any communication sent to Cheekwood with regard to decisions made by the Executive Committee was as a courtesy only. Permission was never requested nor granted by Cheekwood, nor did Cheekwood ever veto an Executive Committee Decision, nor did Cheekwood have the authority to do so.

- During my entire involvement with the Swan Ball, all guests have attended the gala by invitation only. This included any and all invitations issued to persons associated with Cheekwood. Cheekwood employees and representatives, to include the Cheekwood CEO, have attended only at the permission and approval of the Committee. Cheekwood was permitted to submit names for consideration by the committee that determined who was to receive an invitation, but no Cheekwood employee or representative was involved with the Committee, Cheekwood was not represented on that committee nor invited to the

meetings. Cheekwood had no authority, nor did it ever attempt to assert authority over the invitations list.

- At no time during my involvement in a leader-ship role with the Swan Ball did I report to any employee of Cheekwood, nor would I have initiated, agreed to or continued my involvement with Swan Ball if reporting to an employee of Cheekwood was a requirement.

- I understand that Cheekwood asserts that the Swan Ball Committee has been an "unincorporated fund raising agent" of Cheekwood and that Committee volunteers were considered "designated agents" of Cheekwood. I was unaware of these characterizations and never agreed to them, and they are inaccurate; as to my knowledge the Swan Ball Committee has always operated independently, not under the control of Cheekwood.

- During my time on the Executive Committee, it is my understanding that the Swan Ball event used vendors that were not included on the "approved vendors" list promulgated by Cheekwood, and that Cheekwood was aware of this and did not object.

- As to my time as co-chair of the annual ball, I was invited by the Nominating Committee, a group of former Swan Ball Chairmen. No employee of Cheekwood participated in that meeting. I accepted the nomination by contacting the Chairman of the Nominating Committee or another member of the Nominating Committee.

- My co-chairman and I made the decisions concerning all aspects of the gala event, including but not limited to the volunteer committee chairmen and party hosts, the event theme, the event coordinator and/or designer, the logo design, the invitation design, the décor, the floral arrangements, the entertainment, the caterer, the menu, etc. No Cheekwood employee was involved in these decisions, nor did they have a right of refusal.

- Contrary to Ms. McLeod's sworn statement, when I was co-chair of the event, I did not meet "on a monthly basis" with the CEO of Cheekwood, did not coordinate underwriter solicitations and benefits with he CEO of Cheekwood, did not request or receive approval of materials describing underwriter funds, did not solicit or take any recommendations for Swan Ball invitees or prospective Swan Ball Patrons from the Cheekwood CEO, nor did we solicit or receive input on Swan Ball entertainment or Swan Award winners from the Cheekwood CEO. No employee of Cheekwood had approval or veto authority over any over the above. All of these areas remained the sole purview of the co-chairs or the Executive Committee of the Swan Ball.

- Also contrary to Ms. McLeod's sworn statement, the COO of Cheekwood was never the "lead point person" on operations for "all logistics and production" did not attend *any* pre-production or production meetings with event planners, did not review plans policies or conflicts, did not advise on access or vendor guidelines, parking transportation lighting or sound etc. No employee of Cheekwood had approval or veto authority over any over the above. All of this remained the sole purview of the co-chairs or the Executive Committee.

- If my Co-Chair or I needed guidance as to specific decisions, we consulted the "Mini Committee" (a small group of former Swan Ball Chairmen). Occasionally the Mini-Committee would seek guidance and a vote from the governing body of Swan Ball, the Executive Committee.

- At no time did either my Co-Chair or I consult a Cheekwood employee for approval on any issue related to the Swan Ball gala, unless it was related to the physical logistics (activities in the mansion).

- My Co-Chairman and/or I signed a number of contracts for the vendors in either our individual capacity or on behalf of the Swan Ball/Swan Ball Committee. No Cheekwood employee was a part of the negotiation of those contracts, did not approve the contracts, did not review the contracts prior to its execution, nor was a party to the contracts nor was bound by the terms of the contracts.
- A volunteer treasurer opened a bank account for the use of our ball year only. Only my Co-Chair, our volunteer treasurer, and I had signatory authority on this account. Cheekwood did not have access to, nor signatory authority on this account.
- The Paper Place, designed the Swan Ball logo used for the year I chaired the Ball. No Cheekwood employee had any input, involvement, approval, or denial authority in the design of the logo.
- I did not at any time believe that I reported to the Cheekwood organization, or any employee associated with that organization.
- To the best of my knowledge, neither Cheekwood nor any employee ever had approval or veto authority over any aspect of the Swan Ball, aside from a list of approved vendors permitted on the property that is provided for any event held on the property, and decisions related to the physical plant.

I declare under penalty of perjury that the foregoing is true and correct.

Signed,

_____Sissy Wilson_____Name

_____Signature

Executed on ____9/5/2024_____ (date).