## Articles of Incorporation of SB Initiative, Inc.

**Article I: Name**

The name of the corporation is SB Initiative, Inc.

**Article II: Duration**

The duration of the corporation shall be perpetual.

**Article III: Purpose**

The corporation is organized exclusively for charitable purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, as decided and determined by a majority vote of the then current Executive Committee.

**Article IV: Nonprofit Status**

This corporation is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, fundraising for, and the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code. No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to its members, trustees, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article III hereof. No substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office. Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or (b) by a corporation, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

**Article V: Board of Directors**

The initial Board of Directors shall consist of eleven (11) directors, and will for continuity of terminology may be called the Executive Committee. These terms and membership thereon

shall be interchangeable. The number of directors may be increased or decreased from time to time by amendment to the bylaws, but the number shall not be less than three.

**Article VI: Registered Agent**

The name and address of the corporation's initial registered agent is:

Waddey Acheson, 1030 16th Ave South, 2nd Floor, Nashville, TN 37212

**Article VII: Dissolution**

Upon the dissolution of the corporation, assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government, for a public purpose. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purposes.

**Article VIII: Amendments**

These articles of incorporation may be amended by a majority vote of Executive Committee at any regular or special meeting, provided notice of the proposed amendment is given in the notice of such meeting.

**Article IX: Initial Directors**

The names and addresses of the initial directors are as follows:

1. Elizabeth Akers – 635 Park Hill Drive, Nashville, Tennessee 37205
2. Beth Alexander – 181 Valley Forge, Nashville, Tennessee 37205
3. Laurel Buntin - 105 Leake Avenue #56, Nashville, Tennessee 37205
4. Kathryn C. Brown – 4410 Truxton Place, Nashville Tennessee 37205
5. Kathleen Estes - 5125 Annesway Drive, Nashville, Tennessee 37205
6. Karyn Frist – 701 Belle Meade Boulevard, Nashville, Tennessee 37205
7. Peggy Kinnard – 429 Jackson Boulevard, Nashville, Tennessee 37205
8. Anne Maradik - 207 Lynwood Boulevard, Nashville, Tennessee 37205
9. Jennie McCabe – 4418 Herbert Place, Nashville, Tennessee 37215
10. Elizabeth L. Nichols – 416 Jackson Boulevard, Nashville, Tennessee 37205
11. Amy Liz Riddick – 4412 Sheppard Place, Nashville, Tennessee 37205
12. Sissy Wilson – 700 Belle Meade Boulevard, Nashville, Tennessee 37205

**Article X: Incorporator**

The name and address of the incorporator is:

Chanelle Acheson, Waddey Acheson, 1030 16th Ave South, 2nd Floor, Nashville, TN 37212

**IN WITNESS WHEREOF**, the undersigned, being the incorporator hereinbefore named, has executed these Articles of Incorporation for the purpose of forming a nonprofit corporation under the laws of the State of Tennessee on this 23rd day of May, 2024.

Chanelle R. Acheson

Registered Agent



**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

May 23, 2024

SB Initiative
CHANELLE ACHESON
STE 165 2ND FLOOR
1030 16TH AVE S
NASHVILLE, TN 37212

## Filing Acknowledgment

Please review the filing information below and notify our office immediately of any discrepancies.

| | | | |
|---|---|---|---|
| SOS Control # : | 001543879 | Formation Locale: | TENNESSEE |
| Filing Type: | Nonprofit Corporation - Domestic | Date Formed: | 05/23/2024 |
| Filing Date: | 05/23/2024 11:05 AM | Fiscal Year Close: | 8 |
| Status: | Active | Annual Report Due: | 12/01/2024 |
| Duration Term: | Perpetual | Image # : | B1567-5685 |
| Public/Mutual Benefit: | Public | | |
| Business County: | DAVIDSON COUNTY | | |

### Document Receipt

| | | |
|---|---|---|
| Receipt # : 009014895 | Filing Fee: | $100.00 |
| Payment-Credit Card - State Payment Center - CC #: 3874677976 | | $100.00 |

Registered Agent Address:
Waddey Acheson LLC
CHANELLE ACHESON
STE 165 2ND FLOOR
1030 16TH AVE S
NASHVILLE, TN 37212

Principal Address:
CHANELLE ACHESON
STE 165 2ND FLOOR
1030 16TH AVE S
NASHVILLE, TN 37212

Congratulations on the successful filing of your Charter for SB Initiative in the State of Tennessee which is effective on the date shown above. You must also file this document in the office of the Register of Deeds in the county where the entity has its principal office if such principal office is in Tennessee. Please visit the Tennessee Department of Revenue website (www.tn.gov/revenue) to determine your online tax registration requirements. If you need to obtain a Certificate of Existence for this entity, you can request, pay for, and receive it from our website.

You must file an Annual Report with this office on or before the Annual Report Due Date noted above and maintain a Registered Office and Registered Agent. Failure to do so will subject the business to Administrative Dissolution/Revocation.

Tre Hargett
Secretary of State

# Bylaws of SB Initiative, Inc.

## Article I: Name and Purpose

**Section 1: Name** The name of the organization shall be SB Initiative, Inc., dba Swan Ball (hereafter referred to as "the Organization").

**Section 2: Purpose** The Organization is organized exclusively for charitable, educational, and scientific purposes under Section 501(c)(3) of the Internal Revenue Code. The purpose of the organization is to raise funds for charitable causes. The primary fundraising activities of the Organization include, but are not limited to, fundraisers, charity dinners, charity auctions, a Ball, and other activities aimed at raising money for charitable organizations or causes. The charitable organizations and causes which benefit from funds raised will be determined annually by a majority vote of the Board of Directors.

## Article II: Successor in Interest

SB Initiative, Inc. is an organization formed on May 23, 2024, as a Nonprofit Corporation under the laws of the State of Tennessee. The organization is a successor-in-interest to the unincorporated volunteer fundraising committee first organized by Jane Dudley in 1963. The Organization is a new legal entity, entirely separate from the committee to which it is the successor in interest. However, for purposes of historical procedure and precedent, continuity of application, and ease of reference, any mention of "Swan Ball," "the Organization," "SB" or previous events or persons associated with the current organization or the predecessor in interest committee are presumed to include those associated with the prior unincorporated volunteer committee and the current incorporated legal entity.

## Article III: Board of Directors

**Section 1: Composition and Roles** The Organization will be governed by a Board of Directors (previously known as the "Executive Committee"). The purpose of the Board will be to vote on and make decisions affecting the Organization unless the power to make a certain decision or category of decisions has been specifically delegated to a specific individual or committee. The roles and responsibilities of the Board include setting policies, overseeing the Organization's activities, exercising reasonable care, consistent with the business judgement rule, and ensuring compliance with legal and financial requirements. The Board of Directors (hereafter referred to as "the Board") shall consist of at least nine members, but not more than 13, including the officers of the Organization.

**Section 2: Terms of Service** Board members shall serve for a 3-year term and may be re-elected for two consecutive 3- year terms. After serving three 3-years terms a Board member must roll-off for 1 year.

**Section 3: Election and Removal** To be considered a candidate for Board membership, the candidate must have either served as Chairman of the Swan Ball any year before the current year or have served in a significant role for Swan Ball for 5 years or more.

A candidate may be nominated by any current member of the Board. Board members shall be elected by a majority vote of the existing Board members. A Board member may be removed for cause by a two-thirds vote of the remaining Board members.

**Section 4: Meetings** The Board shall meet at least quarterly to conduct its business. Special meetings may be called by the Chairperson or a majority of the Board members. Notice of meetings shall be provided at least 7 days in advance, unless exigent circumstances necessitate a shorter notice period.

**Section 5: Quorum and Voting** A quorum for Board meetings shall be a majority of the Board members. Decisions shall be made by a majority vote of those present.

**Section 6: Delegation of Authority** Delegation of authority must be by majority vote and must be recorded in the minutes of the meeting. Such delegation can be overruled or revoked by the Board by a majority vote.

## Article IV: Officers

**Section 1: Titles and Duties**
- **Chairman**: Presides over the Board meetings, represents the Organization, and ensures the implementation of Board decisions.
- **Vice-Chairman**: Assists the Chairman and acts in their absence.
- **Secretary**: Maintains records of meetings and ensures compliance with reporting requirements.
- **Treasurer**: Oversees financial matters, including budgeting, accounting, and reporting.

**Section 2: Election and Terms of Service** Officers shall be elected by the Board and serve for a term of 3 years. Officers may be re-elected for consecutive terms.

**Section 3: Removal** An officer may be removed for cause by a two-thirds vote of the Board.

## Article V: Organizational Structure

**Section 1: Leadership Committees**

1. **Board of Directors (formerly the "Executive Committee")**: The Board of Directors shall be responsible for the ongoing management and operations of the Organization.

   a. The Chairman of the Board will typically be the immediate past Chair of the Mini Committee and will serve a minimum one 3-year term. If the outgoing Mini

Committee Chair is unable or unwilling to serve as Chairman, the Board will either request that the then sitting Chairman of the Board serve an additional 3-year team or will vote to elect as Chairman another member currently serving on the Board.

b. In addition to the 4 officers of the Board, the Board shall be comprised of the Chairmen of the following Standing Committees:
  i. Mini
  ii. Nominating
  iii. Arrangements (aka Invitations)
  iv. Patrons -2 Co-Chairmen

c. In addition to the 4 officers of the Board and the 5 Chairmen of the Standing Committees, up to 4 additional Members who bring specific skills or competencies to the Organization (ex. Marketing, PR, Strategy, Legal, Accounting, Operations or Business Judgement) may be added.  Article III Section 3 of this document describes the process for adding or removing members.

d. SB Initiative is a volunteer organization. No member of the Board of Directors, nor any other committee shall receive compensation for their participation in or with the Organization Board or Committees. Compensation as an outside vendor or business or member thereof doing business with the organization shall be governed by Article VII, Section 7, Conflict of Interest.

e. Every year at the January meeting, the Board will vote on the organization or organizations to receive the next year's Swan Ball donation. A decision will be made by majority vote. Any organization considered as a candidate recipient must be a charitable organization within the meaning of Section 501(c)(3) of the Internal Revenue Code.

f. Six months prior to the end of the term of a currently serving Committee Chairman, the Board shall either request that the current Chairman serve an additional term, or identify a new Chairman of the committee in question. Any board member may nominate a candidate. Approval shall be by majority vote.

2. **Advisory Committee**: The Advisory Committee is established to provide guidance and advice on various aspects of the Organization's activities to the Board and Committees.

a. The Advisory Committee shall include all past Chairmen and Co-Chairmen of the Swan Ball.

b. The Advisory Committee's role is strictly to provide guidance and does not have decision-making authority.

3. **Honorary Executive Committee**: The purpose of the Honorary Board Committee is to recognize and acknowledge individuals who have made significant contributions to the Organization.

   a. The Honorary Executive Committee is made up of well-respected, well-connected women in the community who have never served as a Chairman or Co-Chairman of Swan Ball. Their names are listed on the Organization letterhead.

   b. Members of this committee serve at the annual invitation of the Swan Ball Chairmen. Each year's Chairmen may propose individuals they would like to be included. The Mini Committee will consider and approve any additions or deletions to this committee. The invitation to this committee should not imply that the commitment is an ongoing or permanent one. Balance and diversity are factors to consider, as well as keeping the size small enough to be selective.

   c. Although it is an honorary list, it is expected that these individuals will give generously of their time, talents, expertise, advice, contacts and/or means.

   d. If members of the committee do not support the Ball either by participating as a Patron or attending the Ball, they should be considered by the Mini Committee for removal. Removal should be discussed with the Ball Chairmen before a decision is made.

**Section 2: Standing Committees** The purpose of the Standing Committees is to support a specific part of the Organization's mission, as delineated below**.**

Committee Chairmen will serve at least one 3-year term. Committee Chairmen of standing committees may serve multiple consecutive or non-consecutive terms. Standing Committees should have 5-10 members with each member serving a minimum of 3 years. Committee leadership should use their best efforts to add new members to their committees on an annual basis as existing members' terms expire.

The Organization shall have the following Standing Committees:

1. **Mini Committee** The purpose of the Mini Committee is to serve as advisors to the current Swan Ball Chairmen.

   a. A maximum of twelve members from the Advisory Board shall serve on the Mini Committee. In addition to the Chairman of the Mini Committee, the Mini Committee is made up of:
      1. The Chairman of the Board
      2. The Committee Chairmen from the following committees:
         a. Arrangements

      b. Nominating
      c. Patrons
      d. Dance

3. One advisor selected by each of the current Swan Ball Chairmen.
4. Up to four members of the Advisory Committee are appointed by the Mini Committee Chairman each year who will serve for a minimum 1-year term and a maximum of three years.

b. Issues affecting only the <u>current</u> Swan Ball will be presented by the Chairmen to the Mini Committee for discussion and recommendations. If the Mini Committee cannot reach a consensus on the topic, or if the topic has <u>long-term</u> ramifications (e.g., change in ticket price, etc.), the topic will be presented to the Board, which will make a final decision by a majority vote of the Board members.

b. The Mini Committee will meet monthly, at a standing/set day and time to be agreed upon by the Swan Ball Chairmen and the Mini Committee Chairman. At the Swan Ball Chairmen's request the Mini Committee may meet during the summer; otherwise, meetings will be held in September, October, November, January, February, March, April, and May. The closing meeting for that year's Mini Committee will be held in August. The SB Chairman may request additional meetings of the Mini Committee as needed. If conflicts arise the SB Chairmen may submit a request for an alternative date. If the chairmen require a meeting to discuss time sensitive or revolutionary ideas more than 12 months out from their SB, they may make a request of Mini Committee for a meeting.

c. A majority of Mini Committee Members must attend the ball.

2. **Arrangements Committee** The purpose of the Arrangements Committee is to establish the list of guests to whom invitations to that year's Swan Ball and Late Party will be extended**.** This committee votes on new guest proposals and updates the files as necessary.

a. This committee meets in September and January each year. Meetings will be coordinated by the Arrangements Chairman.

b. **Addition**: The current Ball Chairmen will present their proposed list of additions to SB and the Late Party invitation list at the September Meeting.

    i. New names may be proposed by the current Ball Chairs, Advisory Committee members, and others who have attended the SB. All proposals must be in writing and submitted on an "official" Organization Proposal Form. Only forms received at the Organization's office prior to the

committee's September meeting shall be considered, unless extraordinary circumstances exist which suggest an exception to this deadline.

    ii. 'One-year only' requests will constitute a second list and will be at the request of the current Ball Chairs.

    iii. Each individual will be limited to three (3) candidates (couples), with the exception of former SB Chairmen who may propose five (5).

    iv. There is a 700 cap on the number of attendees to the Ball and a 300 cap on the Late Party. Exceeding this number has negative fallout the following year.

c. **Review**: The permanent file is reviewed every three years, beginning in the third quarter of 2024.

d. **Removal**: A name will be removed from the invitation list after three years of inactivity. The Arrangements Committee chair will provide the list of pulled invitations to the current Ball Chairmen for review at the October meeting.

e. **Confidentiality:** In the interest of the Swan Ball and the members on the Arrangements Committee, the procedures and the files and the list must be entirely confidential.

f. No corporate tables are considered, as this is a social gathering.

3. **Nominating Committee** The purpose of this committee is the identification and selection of prospective chairmen for the Swan Ball which is 15-20 months in the future, and in any case no later than 15 months in advance of the ball for which the nominees are to be Chairmen.

a. The Nominating Committee consists of 9 members, invited to become a member of the committee by the current Chairman of the Nominating Committee. Any former SB Chairman is eligible to serve on this committee.

b. Qualified candidates will be representative community leaders who have demonstrated an interest in or support of Swan Ball for a period of time.

c. The Nominating Committee will document candidates who are under consideration and candidates who are asked, for future reference. This list shall be kept strictly confidential.

d. When the new SB Chairmen have accepted, the Chairman of the Nominating Committee and the Chairman of the Mini Committee will present them with a Chairmen's Guidelines document and an electronic version of a previous SB Chairmen's Report.

     e.   In the event a Nominee declines this shall be documented by the Chairman of the Nominating Committee. The Nominating Committee shall then select another Chairman from those in consideration.

     f.   Each chairman should select someone from the Advisory Committee to serve as their advisor within two (2) weeks of accepting their nomination.

4. **Patrons Committee** The purpose of the Patrons Committee is to manage the existing Patrons list and respond to recommendations regarding new Patron candidates.

     a.   The Patron's Committee Chairmen and members of the Patrons Committee are confidential.

     b.   Patrons are by invitation only. As of 2024, the required donation is $3,500 (whether for a single or a couple), although Patrons can give at a $5,000 or $10,000 level.

     c.   All Patrons' information is confidential.  Patrons may only be proposed by other Patrons or a past Swan Ball Chairman.

     d.   Patron Party Hosts pay for a black-tie dinner party each year to celebrate the Patrons for that year.

5. **Dance Committee**

     a.   The purpose of the Dance Committee is to:

         i.   Build volunteer interest in the Swan Ball by individuals who graduated from high school at least six years prior and who are the children and grandchildren of past Swan Ball Chairmen and/or Patrons.  Stepchildren and step-grandchildren are also considered qualified candidates (Dance Committee members retire at 29)

         ii.   Provide volunteer manpower for the Swan Ball at the Swan Ball Auction Party and on the night of the Swan Ball.

     b.   The Dance Committee is led by a Volunteer Chairman and a Co-Chairman and is supported by the Dance Committee Advisor, who is a former Swan Ball Chairman.

     c.   The Dance Committee is by invitation only.

**Section 3: Fund-raising Committees and Party Hosts** The purpose of fundraising committees is to seek donations as additional revenue sources.  Parties are held throughout the year to raise awareness and build excitement for Swan Ball; these parties are paid for by the Party Hosts.

1.  **Gentlemens' Committee** Two volunteer 'Gentlemen' from the Swan Ball community sign letters inviting the men who are on the Swan Ball list to join The Gentlemens' Committee at a price of $1,600. They 'host' the cocktail party held before the Swan Ball; they receive no other perk other than a listing in the program. This is a significant revenue source for the Swan Ball.

2.  **Ladies' Committee**: Two volunteer 'Ladies' from the Swan Ball community sign letters inviting the ladies who are on the Swan Ball list to join The Ladies' Committee at a price of $300. They receive no other perk other than a listing in the program. This is a significant revenue source for the Swan Ball.

3.  **Party Hosts:** Parties held throughout the year, which are paid for by the hosts/hostesses, and include:
    a. Kick-off Party
    b. Reveal Party
    c. Auction Meeting Dinner Parties
    d. Jewelry Party
    e. Patrons Party

**Section 4: Swan Award** For years the Swan Award recipient was selected by a small committee led by Jane Dudley; the recipient was typically someone on the national scene that the committee deems to have greatly supported the arts. Today, the Swan Ball Chairmen and Mini-Committee collaborate on candidates who would be appropriate; the person in this group who has the best connection to the potential recipient will extend the invitation.  Traditionally, the award has been presented at the Ball, and the recipient is encouraged not to make a lengthy speech.

**Section 5: Rights and Responsibilities**

a.  The Chairman of the Board shall have the right to attend all committee meetings, participate in discussions, and vote on matters concerning the Organization.

b.  Members of individual committees not the Board shall have the right to attend all their specific committee meetings, and other committee meetings by invitation only.

c.  All committee members are responsible for upholding the Organization's mission and adhering to its policies and procedures.

**Section 6: Appointment and Removal** Committee members shall be appointed as described in the above committee sections. Chairmen and other roles will also be nominated and appointed as described in the appropriate section. Committee members may be removed by a request of the

Committee Chairman, or the SB Chairman made to the Board and removed upon a majority vote of the Board.

## Article VI: Meetings

**Section 1: General Meetings:**
1. Board of Directors: The Board of Directors holds meetings quarterly.
2. Advisory Committee: The Advisory Committee meets at the invitation of the Board of Directors.
3. Mini Committee: The Mini Committee will meet at a standing/set day and time to be agreed upon by the Swan Ball Chairmen and the Mini Committee Chairman. At the Swan Ball Chairmen's request, the Mini Committee will meet during the summer; otherwise, meetings will be held in September, October, November, January, February, March, April, and May. The closing meeting will be held in August.
4. Arrangements Committee: The Arrangements Committee holds meetings in September and January.
5. Nominating Committee: The Nominating Committee holds meetings in August, September, and October.
6. Patrons Committee: The Patrons Committee holds meetings in the later part of January and in early April.
7. Dance Committee: The Dance Committee holds meetings in May and June.
8. The above meeting dates may be adjusted as necessary by request of the Committee Chairman and approved by two-thirds majority vote.

**Section 2: Special Meetings** Special meetings may be called by the Chairmen of the individual committees. Notice of special meetings shall be provided at least 7 days in advance, unless unusual exigent circumstances necessitate otherwise.

**Section 3: Quorum and Voting** A quorum for general and special meetings shall be a simple majority of those members currently serving on that committee. Decisions shall be made by a majority vote of those present.

**Section 4: Record-Keeping and Minutes** The Secretary shall maintain minutes of all Board meetings, which shall be distributed to members and kept on record. An individual on each committee shall be identified to act as Secretary to maintain records of the individual committee meetings.

## Article VII: Financial Management

**Section 1: Fiscal Year** The fiscal year of the Organization shall begin on September 1 and end on August 31.

**Section 2: Budget** The annual budget shall be prepared by the Treasurer and approved by the Board.

**Section 3: Accounting and Audits** The Organization shall maintain accurate financial records and undergo an annual audit by an independent auditor.

**Section 4: Management of Funds** All funds shall be managed in accordance with the Organization's financial policies. The Treasurer shall oversee the receipt, management, and disbursement of funds.

**Section 5: Start Up Fund** From year to year, in order to open the next year's Swan Ball account, the Treasurer shall advance $100,000 from the current ball year. When the next ball year is in a strong cash flow position (usually the following Spring) the Treasurer transfers the $100,000 back to the ball that earned the monies. The $100,000 is considered a loan without any interest.

**Section 6: Discretionary Fund** $10,000 will be held back each year for a discretionary fund. The fund will be held for expenses that might arise from time to time related to technology needs, public relations expenses, etc. The use of the funds will be approved by the Board.

- A fund is maintained for memorials and special recognitions of the Advisory Committee. $2000 a year should be set aside to maintain this fund.

**Section 7: Conflict of Interest**

1. **Purpose:** The purpose of this conflict of interest policy is to protect the interests of the Organization when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an officer or director of the Organization or might result in a possible excess benefit transaction. This policy is intended to supplement but not replace any applicable state and federal laws governing conflict of interest applicable to nonprofit and charitable organizations.

2. **Definitions**
   a. Interested Person: Any director, principal officer, or member of a committee with governing board-delegated powers, who has a direct or indirect financial interest, as defined below, is an interested person.

   b. Financial Interest: A person has a financial interest if the person has, directly or indirectly, through business, investment, or family:
      i. An ownership or investment interest in any entity with which the Organization has a transaction or arrangement,
      ii. A compensation arrangement with the Organization or with any entity or individual with which the Organization has a transaction or arrangement, or
      iii. A potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which the Organization is negotiating a transaction or arrangement.

    c. Compensation includes direct and indirect remuneration as well as gifts or favors that are not insubstantial. A financial interest is not necessarily a conflict of interest. Under Section 3, a person who has a financial interest may have a conflict of interest only if the appropriate governing board or committee decides that a conflict of interest exists.

3. **Procedures**

    a. Duty to Disclose: In connection with any actual or possible conflict of interest, an interested person must disclose the existence of the financial interest and be given the opportunity to disclose all material facts to the members of committees considering the proposed transaction or arrangement.

    b. Determining Whether a Conflict of Interest Exists: After disclosure of the financial interest and all material facts, and after any discussion with the interested person, he/she shall leave the meeting while the determination of a conflict of interest is discussed and voted upon. The remaining board or committee members shall decide if a conflict of interest exists.

    c. Procedures for Addressing the Conflict of Interest:

        i. An interested person may make a presentation at the Board meeting, but after the presentation, he/she shall leave the meeting during the discussion of, and the vote on, the transaction or arrangement involving the possible conflict of interest.

        ii. The chairperson of the Board shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.

        iii. After exercising due diligence, the Board shall determine whether the Organization can obtain, with reasonable efforts, a more advantageous transaction or arrangement from a person or entity that would not give rise to a conflict of interest.

        iv. If a more advantageous transaction or arrangement is not reasonably attainable under circumstances that would not give rise to a conflict of interest, the Board shall determine by a majority vote of the disinterested directors whether the transaction or arrangement is in the Organization's best interest, for its own benefit, and whether it is fair and reasonable. In conformity with the above determination, it shall make its decision as to whether to enter into the transaction or arrangement.

    d. Violations of the Conflicts of Interest Policy:

        i. If the Board or committee has reasonable cause to believe a member has failed to disclose actual or possible conflicts of interest, it shall inform the member of the basis for such belief and afford the member an opportunity to explain the alleged failure to disclose.

ii. If, after hearing the member's response and after making further investigation as warranted by the circumstances, the Board determines the member has failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action.

e. Records of Proceedings: The minutes of the Board and all committees with board-delegated powers shall contain:

i. The names of the persons who disclosed or otherwise were found to have a financial interest in connection with an actual or possible conflict of interest, the nature of the financial interest, any action taken to determine whether a conflict of interest was present, and the Executive decision as to whether a conflict of interest in fact existed.

ii. The names of the persons who were present for discussions and votes relating to the transaction or arrangement, the content of the discussion, including any alternatives to the proposed transaction or arrangement, and a record of any votes taken in connection therewith.

f. Compensation

i. A voting member of the Board who receives compensation, directly or indirectly, from the Organization for services is precluded from voting on matters pertaining to that member's compensation.

ii. A voting member of any committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly, from the Organization for services is precluded from voting on matters pertaining to that member's compensation.

iii. No voting member of the governing board or any committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly, from the Organization, either individually or collectively, is prohibited from providing information to any committee regarding compensation.

g. Annual Statements

i. Each director, principal officer, and member of a committee with governing board-delegated powers shall annually sign a statement which affirms such person:

1. Has received a copy of the conflicts of interest policy,
2. Has read and understands the policy,
3. Has agreed to comply with the policy, and
4. Understands the Organization is charitable and in order to maintain its federal tax exemption it must engage primarily in activities that accomplish one or more of its tax-exempt purposes.

h. Periodic Reviews: To ensure the Organization operates in a manner consistent with charitable purposes and does not engage in activities that could jeopardize its tax-

exempt status, periodic reviews shall be conducted. The periodic reviews shall, at a minimum, include the following subjects:

    i. Whether compensation arrangements and benefits are reasonable, based on competent survey information, and the result of arm's-length bargaining.

    ii. Whether partnerships, joint ventures, and arrangements with management organizations conform to the Organization's written policies, are properly recorded, reflect reasonable investment or payments for goods and services, further charitable purposes, and do not result in inurement, impermissible private benefit, or in an excess benefit transaction.

    i. Use of Outside Experts: When conducting the periodic reviews as provided for in Section 7, the Organization may, but need not, use outside advisors. If outside experts are used, their use shall not relieve the governing board of its responsibility for ensuring periodic reviews are conducted.

## Article VIII:  Employees

**Section 1: Purpose** The Board shall have the power to hire employees as necessary to fulfill its mission and objectives. The employment of any individual shall be subject to the approval of the Board.

**Section 2: Roles and Responsibilities**

1. The roles and responsibilities of each employee shall be defined in their job description, which shall be developed by Mini Committee and approved by the Board.

2. Employees are expected to perform their duties in a manner that aligns with the mission, values, and goals of the Organization.

**Section 3: Compensation**

1. The compensation of employees shall be determined by the Board of Directors and shall be fair, reasonable, and commensurate with the services provided. The compensation

2. The compensation shall be reviewed annually by the Board of Directors to ensure alignment with the financial health and goals of the Corporation.

3. Individuals with a conflict of interest shall not participate in the decision-making process regarding compensation.

4. The Board or compensation committee shall use appropriate comparability data, such as industry surveys and compensation studies, to determine reasonable compensation levels.

5. Factors such as the size of the Organization, geographic location, and the nature of the work performed shall be considered.

**Section 4: Performance Evaluation**

1. Employees shall undergo an annual performance evaluation conducted by the Mini Committee Chairman with input from the existing Swan Ball Chairmen.

2. The results of the performance evaluation shall be documented and used to guide professional development and compensation decisions.

**Section 5: Termination**

1. As at-will employees, any employee may be terminated at any time, with or without cause, and with or without notice, except as otherwise provided by law or any applicable employment agreement.

2. Termination proceedings may be initiated at the request of the Chairman of the Board of Directors or the Chairman of the Mini Committee, who shall present the issue to the Mini Committee. The Mini Committee shall make a recommendation to the Board, who will decide the issue by majority vote. Proceedings shall be conducted in accordance with applicable employment laws and regulations and shall be subject to the approval of the Board.

**Section 6: Conflict of Interest**

1. Employees shall avoid any conflict of interest or appearance of conflict of interest in their duties and responsibilities.

2. Employees must disclose any potential conflicts of interest to the Chairman of the Board and the Board of Directors.

## Article IX: Amendments

**Section 1: Proposal of Amendments:** Amendments to these bylaws may be proposed by any member of the Board.

**Section 2: Approval of Amendments:** Amendments must be approved by a two-thirds vote of the Board.

## Article X: Continuance and Dissolution

**Section 1: Future** Each year, at the third quarter board meeting, two calendar years in advance of the "next" Ball, a vote will be held by the Board to determine whether to hold the "next" year's Ball. A vote to hold the next Swan Ball need only pass by a majority vote. A vote to discontinue the Ball must be passed by a two-thirds majority of the Board. In the event the Board votes to discontinue the next year's Ball, a vote may be requested by any member of the then-former Board one-year after the vote to discontinue, and at a one-year interval every year thereafter for five (5) years. After a vote to discontinue by a two-thirds majority of the Board, a vote to hold a Swan Ball in the year following the requested vote must then pass by a two-thirds majority of the Board members voting.

**Section 2: Dissolution Process** The Organization may be dissolved by a two-thirds vote of the Board.

**Section 3: Distribution of Assets** Upon dissolution, the Organization's assets shall be distributed for one or more exempt purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.

## Article XI: Retention of Outside General Counsel

**Section 1: Appointment and Retention**: The Board shall have the authority to retain an outside General Counsel to provide legal services and advice to the organization. The retention of the General Counsel shall be conducted in compliance with all applicable federal, state, and local laws and regulations.

**Section 2: Selection of General Counsel**

1. **Recommendation for Retention**: It is recommended that Chanelle Acheson of the firm Waddey Acheson be retained as the outside General Counsel for SB Initiative, Inc.
2. **Approval Process**: The appointment of the General Counsel shall be approved by a majority vote of the Board. The decision to retain or terminate the services of the General Counsel shall be documented in the minutes of the Board meetings.

**Section 3: Scope of Services**: The General Counsel shall be responsible for providing a wide range of legal services, including but not limited to:

- Advising on corporate governance and compliance issues.
- Reviewing and drafting contracts and agreements.
- Representing the organization in legal matters and proceedings.
- Providing counsel on employment law matters.
- Assisting with regulatory compliance specific to 501(c)(3) organizations.

**Section 4: Compensation**: The compensation of the General Counsel shall be determined by the Board and shall be in accordance with the General Counsel's standard billable rates and consistent with the fair market value for legal services provided to nonprofit organizations. The terms of compensation shall be outlined in a written agreement between the organization and the General Counsel.

**Section 5: Term and Termination**

1. **Term**: The General Counsel shall serve for a term of five [5] years, subject to renewal by the Board of Directors.
2. **Termination**: The Board of Directors reserves the right to terminate the services of the General Counsel at any time, with or without cause, by a majority vote. Such termination shall be effective upon 30 days written notice to the General Counsel.

**Section 6: Conflict of Interest**

The General Counsel shall disclose any potential conflicts of interest to the Board of Directors. The organization shall take appropriate steps to ensure that any conflicts of interest are managed in accordance with applicable laws and the organization's conflict of interest policy.

**Section 7: Compliance with Laws**

The retention and activities of the General Counsel shall be conducted in compliance with all applicable federal, state, and local laws and regulations, including those governing nonprofit organizations and tax-exempt status under Section 501(c)(3) of the Internal Revenue Code.

## Article XII: Non-Discrimination Policy

The Organization shall not discriminate on the basis of race, color, religion, gender, sexual orientation, national origin, age, disability, or any other characteristic protected by law in any of its activities or operations.

## Article XIII: Miscellaneous

1. **Specific Monetary Amounts Contained Herein**: All monetary values (such as contribution amounts, ticket prices, prices for inclusion in committees, etc.) are current as of 2024. Changes to these amounts may be proposed by the Chairmen of the Ball or by the Chairmen of the individual committees to the Mini Committee who will make a recommendation to the Board. The issue will be decided by a majority vote of the Board.

2. **Political Campaign Activity Prohibition**: The Organization shall not participate in or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office. No substantial part of the activities of the Organization shall be the carrying on of propaganda, or otherwise attempting to influence legislation, except as otherwise permitted by Section 501(h) of the Internal Revenue Code, and the Organization shall not participate in any other activities not permitted to be carried on by a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code.

3. **Insurance:** The Organization shall obtain and maintain, at the Organization's expense, appropriate insurance as determined by the Board, including but not limited to: General Liability Insurance, Directors and Officers Insurance, Workers Compensation Insurance, and Liquor Liability Insurance. Other forms of insurance to be considered by the Board may include: Event Insurance, Volunteer Liability Insurance, Property Insurance, Cyber Liability Insurance, or other insurance products determined by the Board, however a decision by the Board not to purchase any or all of the second group of coverages shall in no way be deemed negligence or omission.



## State of Tennessee

**Department of State**
Corporate Filings
312 Rosa L. Parks Ave.
6th Floor, William R. Snodgrass Tower
Nashville, TN 37243

**ARTICLES OF CORRECTION**

For Office Use Only

Pursuant to the provisions of Section 48-1-305 of the Tennessee Business Corporation Act or Section 48-51-305 of the Tennessee Nonprofit Corporation Act, the undersigned corporation hereby submits this application:

1. The name of the corporation is  SB Initiative, Inc.

2. Please mark the sentence below which  **applies**.

☐  A copy of the incorrect document (as filed) is attached.

☐  A description of the incorrect document (including its filing date) is given here:
Original filing with the Secretary of State left off the "Inc." at the end of the name

3. If the document is incorrect because of incorrect statement(s), enter the incorrect statement(s) and the reason(s) it/they is/are incorrect:
filer forgot to add "Inc." at the end of the name

4. The correct statement(s) is/are:
SB Initiative, Inc.

5. If the document is incorrect because of a defective execution, state the manner in which the execution was defective:

6. The correct execution should be:

_____     31 MAY 2024     SB Initiative, Inc
Signature Date                                Name of Corporation

Registered Agent
Signer's Capacity                             Signature

SS-4438 (Rev. 3/99)20     Filing Fee: $20     Chanelle Acheson
                                              Name (typed or printed)          RDA 1678